ROBERT DOSTER v. CHARLOTTE STREET RAILWAY COMPANY.

*Action for Damages—Street Railway Companies—Liability for Injuries Caused by Frightened Animals.*

1. Where a person voluntarily exposes himself, his buggy and mule to the risk of an accident which may result from the animal's taking fright at a noise usually incident to the running of an electric car, and there is no testimony tending to show that the motorman in charge of the car wantonly or maliciously made unnecessary noise for the purpose of scaring the animal, the street railway company is not responsible, on account of its failure to stop the car (in the absence of a collision), for injuries caused by the frightened animal.

2. Where in such case, the animal rushes upon the track in front
     of the car, the company is answerable for the consequences
     of a collision, only where, by proper watchfulness on the
     part of the mortorman, the danger might have been foreseen and the injury prevented by using the appliances at
     his command to stop the car.

CIVIL ACTION, tried before *Winston, Judge*, and a jury, at December Term, 1895, of MECKLENBURG Superior Court, on appeal from Justice's Court.

The action was to recover damages for alleged injuries to plaintiff's buggy and mule, caused by the negligence of the defendant in running its street cars.

The plaintiff, Robert Doster, in his own behalf, testified :

"I came into Charlotte the 1st day of March, 1893, driving a mule to buggy, Miss Culp being with me in the buggy. As we crossed the railroad in front of Dr. Brevard's, we met the street car coming. The mule was frightened, stopped and ran backwards. I tried to waive the street car down. No brakes put on. The mule reared and pitched and was scared to death. I halloed and said stop. Would not do so. I got out and caught mule by the bridle. He broke the buggy in rearing. Mule surged and crushed the buggy. He was scared nearly to death and brayed. I waived at the driver 100 yards from the mule. No obstruction. He was looking at me. It was not over twenty steps when I halloed at him. The car stopped right opposite me. It was stopped by the motorman in front of car. After I waived and at once the mule wheeled and reared. After the mule became frightened, there was no way for me to turn and get out of the way. The buggy was damaged. Mule has been foolish since at the depot. It cost eight dollars and a half to repair the buggy and three or four dollars to come and get the buggy. I lost two days and it cost one dollar and a half to hire buggy to go home that night. The injury from fright to

the mule was twenty-five dollars. I live 18 or 19 miles from Charlotte." Cross examined he stated : "I was in Charlotte in the fall of 1892 several times and had seen the cars passing and repassing and knew the noise they made. They were electric cars and made a peculiar noise which frightened animals. My horses were frightened on one occasion before. I was driving this mule double with a horse. They were frightened at the cars. I did not apprehend any danger, or I would have gone some other way or street. The cars were being run in the usual and ordinary way and there was nothing unusual about the cars that day. The car was coming down grade from towards the Central Hotel. No obstruction. I could see some distance up the street in the direction the car was coming. The car stopped very quick when it began to stop. I could have gotten out and might have prevented the injury, but thought that the car would stop every minute. I might have controlled the mule better, if I had gotten out sooner. The lady was frightened and had hold of me. The car stopped opposite us, about three feet above us."

Ed. Strickland, a witness for defendant, testified :

"I was motorman on the car. Had been running as motorman two years. Not now with the company. The motorman stands in front of car on platform and runs the car. I had my hand on the key to control the current and the brake. The conductor stands on the rear platform. We were going down Tryon street on the 1st day of March, 1892. I did not see Mr. Doster until the car was fifty or sixty feet from him, and I stopped as quick as I could in fifteen feet of him. I did not know that he was in trouble until I got in fifty feet of him. It was down grade and I had shut off the current and applied the brake as soon as I saw his situation. I can stop in a length and a half or

two lengths of a car.   A car is twenty-four feet long.   I
did not see him waive or hear him halloo.   The car was in
the center of the street and he was on side of the street,
near the sidewalk.   You can see a car from where the
buggy was to the Central Hotel, which is two blocks.   A
block is about four hundred feet.   The buggy was between
Third and Second streets.   From Third street to the R. R.
crossing, some three blocks, is down grade.   The motor-
man always sounds the gong at a street crossing and I
sounded it at Third street and Fourth.   You can hear
the sound of the gong a block away, at least.   You can
see from Brevard's house to the Central.   No obstruction.
My duty is to see that I hurt nobody on the track.   As to
the people not on the track, I do not remember any
instructions.   I did not say at the trial before the justices
of the peace, that I saw plaintiff waive me down when I
was 200 feet away from him.   I was looking up and down
Third street at its crossing with Tryon for passengers, as
is the custom.   When I first saw the mule it seemed to be
doing nothing.   I stopped as soon as I saw him waive
me down and because I saw him waive me down.
There was nothing unusual about the mule at first.
The mule reared after we stopped and I then saw that bug-
gy was broke.   I worked that evening for the car com-
pany and did not leave its service because of this accident."

R. McCochrone, a witness for defendant, testified :

"I was the conductor of the car.   Saw the plaintiff and
the mule 100 feet before the accident.   I was looking down
the street on that side.   Saw nothing wrong with the mule.
When the car began to stop, I looked out again and saw
the plaintiff and the mule.   Car then came to a stop, about
fifteen feet from buggy and mule.   The mule had backed
and the buggy was injured, though not much.   Wheel was
mashed."

Defendant introduced in evidence the charter of the city of Charlotte, being an Act to amend the charter of the city of Charlotte, Chapter 40 of the Acts of 1881, ratified March 1st, 1881.

Also the charter of the Charlotte Street Railway Company, Chapter 32, of the Acts of 1883, ratified January 26th, 1883.

Defendant introdued evidence to show that defendant company by its directors had determined to use electricity as the motor power for its street cars, and that Tryon street was one of the public streets of the city of Charlotte.

The following were the issues and responses thereto :

"1. Was the plaintiff's property injured by the negligence of the defendant?    Ans. ' Yes. '

" 2. Did the plaintiff by his negligence contribute to his injury? Ans. ' Yes. '

" 3. Notwithstanding the contributory negligence of the plaintiff, might the accident have been avoided by the exercise of reasonable care on part of the defendant? Ans. ' Yes. '

" 4. What damages, if any, has plaintiff sustained by reason of such injury? Ans. ' Ten Dollars.' "

The defendant asked for the following instruction to be given to the jury :

"1. That if the jury believe the evidence, the defendant had the right to construct its track and run and operate its line of street railway in and along the streets of Charlotte, and especially in and along Tryon street at the point where it is alleged plaintiff received his injury, and had also the right to use electricity as a motive power."

This instruction was given.

"2. That, if defendant, or its agent or servants, on that day and at the time when and place where the accident occurred, was running and operating its cars in and along

Doster v. Street Railway.

Tryon street in the usual manner in which such cars are run or operated, and plaintiff's horse became frightened, then there was no neglect on the part of the defendant, and the jury will find accordingly."

This instruction was given with this qualification : "Unless the motorman saw the danger of the plaintiff and negligently ran the car." Defendant excepted to this qualification of his prayer.

"3. That, if defendant was running its car in the usual way and was not making any unusual and unnecessary noise in d ing so, but the only noise made by the car was that which was made in the use of electricity as a motive power, then defendant was not guilty of any negligence, and the jury should find accordingly."

This instruction was given subject to the qualification above. Defendant excepted to the qualification of its prayer.

"4. That, under its charter, defendant had the right to lay its track and run its cars by the use of electricity, and the mere fact that a noise is made by the use of such power which is calculated to alarm or frighten animals would not constitute negligence on defendant's part, even though plaintiff's horse was frightened by such noise and the injury was thereby produced, and the jury should find accordingly."

This instruction was given.

"5. That, if plaintiff's horse was frightened by the noise produced by the use of electricity, the power employed by the defendant company under the decision of its directors, the conductor of the car or its motorman was not bound to stop, even though he may have seen that plaintiff's horse was frightened, and his failure to do so, even if he did fail to stop the car, would not be negligence, and the jury should so find."

This instruction was given with this qualification: "The conductor of the car, or its motorman, was bound to stop if the danger to the mule and buggy was such that to proceed with the car would necessarily precipitate an accident."

Defendant excepted to the qualification of its prayer.

"6. That if plaintiff's horse was frightened either at the appearance of the car or by the noise neccessarily produced by the use of electricity, the power which the directors of the defendant company chose to use in propelling their cars along their tracks, the defendant was not guilty of negligence, and the jury should so find."

This instruction was given with the following qualification; "Unless the car negligently proceeded after seeing the danger." Defendant excepted to the qualification of the prayer.

"7. That, if defendant could have taken another route or street and in this way have avoided the accident, he was guilty of contributory negligence, and the jury should find accordingly." Refused and defendant excepted.

"8. That if plaintiff knew or had reason to believe that horses and other animals were frightened by the electric cars and notwithstanding this he drove down Tryon street, where he was likely to meet or pass one of the cars, he was guilty of negligence and the jury will so find." Refused and defendant excepted.

The court struck out the 7th and 8th instructions and substituted therefor the following. "That if plaintiff could have taken another route or street and in this way have avoided the accident, or had reason to believe that horses and other animals were frightened by the electric cars and that this mule was frightened by such cars as explained, and notwithstanding this he drove down Tryon street, where he was likely to meet or pass one of the cars,

117—42

he was guilty of negligence, and the jury will so find."
Defendant excepted to this substitute for its prayers 7 and 8.

"9. That, if the jury find that the motorman stopped
the car as soon as he reasonably could in order to prevent
the accident, they will also find that defendant was not
guilty of negligence." This instruction was given.

"10. That the right of the defendant, as a common car-
rier of passengers and as a public agency created for the
convenience and accommodation of the public in the high-
ways or streets of the city of Charlotte, are at least equal to
that of the plaintiff, and if, in exercising its right in said
highway or street in the usual and customary way, the
plaintiff's horse became frightened at its car and the injury
resulted in this way, then defendant was not guilty of neg-
ligence and the jury will so find." This instruction was
given with this qualification: "Unless the danger was
seen and the car ran thereafter, thereby negligently caus-
ing the accident." Defendant excepted to this qualifica-
tion of its prayer for instructions.

"11. That, if plaintiff knew that horses and other ani-
mals were frightened by the electric cars, their appearance
and the noise they made in motion, and chose nevertheless
to drive up Tryon street along or near the defendant's
track where its cars pass and repass at intervals of time,
and where his horse was likely to be frightened by a pass-
ing car, he was guilty of contributory negligence."

This instruction was given with this qualification: "If
he drove a mule that he knew was easily frightened by
cars." Defendant excepted to this qualification of its
prayer.

"12. That, under the facts stated in the next preceding
prayer, if the jury find them to exist, the injury cannot be
said to have been caused by the plaintiff's negligence, if

there was any, as it was not the proximate cause of the injury, and the jury should so find."

This instruction was refused, and defendant excepted.

"13. That if the plaintiff saw the car approaching him in time to have driven into a side street until the car had passed and in this way could have avoided the accident the plaintiff was guilty of contributory negligence in not doing so, and the jury should so find."

This instruction was given with this qualification, viz : "That if plaintiff saw the car approaching him in time to have driven into a side street until the car had passed and in this way could have avoided the accident and knew that his mule was timid and easy to run away in the presence of cars, the plaintiff was guilty of contributory negligence in not doing so, and the jury should so find." Defendant excepted to the qualification of its prayer.

"14. That, under the facts stated in the next preceding prayer, if the jury find them to exist, the injury cannot be said to have been caused by the plaintiff's negligence, if there was any, as it was not the proximate cause of the injury, and the jury should so find."

This instruction was refused, and defendant excepted.

"15. That, if plaintiff could by the exercise of reasonable care, have seen the car approaching and had time to drive into a side street in time to have avoided the accident, he was guilty of contributory negligence in not doing so, and the jury will so find."

This instruction was given with this qualification. "That if the plaintiff could, by the exercise of reasonable care, have seen the car approaching and in time to drive into a side street and avoid the accident, knowing that his animal was timid and afraid of cars, he was guilty of contributory negligence in not doing so, and the jury will so find." Defendant excepted to this qualification of its prayer.

"16. That there is no evidence of negligence on the part of the defendant, and the jury will answer the first issue 'No.'"

This instruction was refused, and defendant excepted.

"17. That if the jury believe the evidence, they will answer the first issue 'No.'"

This instruction was refused, and defendant excepted.

"18. That if the jury believe the evidence they will answer the second issue 'Yes.'"

The court refused this prayer and substituted therefore the following; "That if the jury believe that the plaintiff knew that Tryon street was used to operate street cars upon and that his mule was afraid of such cars and was unmanageable in their presence, and that there were other accesisble streets to travel, and chose to go up the said street in the face of those facts, he would be guilty of contributory negligence in so doing." Defendant excepted to this qualification of its prayer.

"19. That if the jury believe the evidence, they should answer the third issue 'No.'"

This instruction was refused, and defendant excepted.

The court further charged the jury as follows :

"1. Those in charge of an electric car upon a street railway are not required or under obligations to immediately stop the car upon seeing a horse or team by the side of the track that is manifesting fright, unless the situation and all the circumstances would cause a reasonable man to see and believe that damage to the property could not be otherwise avoided. As was held in the courts of Michigan, those in charge of street railway trains, when they see a horse near the track, 300 or 400 feet away, showing signs of fright, are not required to stop at once, but if they slacken their speed and finally stop before reaching the point where

---

DOSTER *v.* STREET RAILWAY.

---

said animal is, they have discharged their duty." Defendant excepted.

"2. In this case, if the mule was frightened by the car, although it was running in the usual way and making no unnecessary noise and the motorman could see the situation and that the mule was likely to injure the buggy, it was his duty to stop the car, and if he failed to do so, the defendant would be liable in damages for his negligence." Defendant excepted.

There were instructions as to the second issue and the fourth issue given, and also as to the third issue, and excepted to as hereinbefore stated.

There was a verdict for the plaintiff; motion for a new trial upon the foregoing exceptions, motion overruled and defendant excepted. Judgment upon the verdict for the plaintiff and appeal by the defendant, assigning as error the foregoing exceptions as noted in the case and each and every one of them, the same as if they were here repeated and set forth separately, and specially, the refusal of the court to give each of the prayers for instruction asked for by it and the qualification of some of them, as noted above and also to the charge of the court marked 1 and to the charge of the court marked 2, being the two separate branches of the general charge or instructions of the court to the jury.

*Mr. James A. Bell*, for plaintiff.
*Messrs. Burwell, Walker & Cansler*, for defendant (appellant).

AVERY, J. : The plaintiff voluntarily exposed himself, his buggy and his mule to the risk of any accident which might be caused by the animal's taking fright at the usual noise incident to running a street car by electricity, there

being no testimony tending to show that the motorman wantonly or maliciously made unnecessary noise for the purpose of scaring the animal.    Where a horse is being driven or is running uncontrolled along a highway parallel to a railway of any kind, though it give unmistakable evidence by its movements that it is alarmed at an approaching train or car, the engineer or motorman in charge is not negligent in failing to diminish the speed, unless the animal is actually on the track in his front, or he has reasonable ground to believe that in its excited state it is about to go or may go upon it, so as to cause a collision.    *Snowden* v. *Railroad,* 95 N. C., 93 ; *Wilson* v. *Railroad,* 90 N. C., 69 ; *Carlton* v. *Railroad,* 104 N. C., 365.    Where the engineer on a railway train actually sees a person driving a team in the direction of a crossing in his front or in the act of passing over it, it is not his duty to stop, unless he has reasonable grounds to believe that the horse or vehicle is in some way fastened or detained upon the track, or that some emergency has arisen which may be reasonably expected to cause a collision with consequent injury to person or property.    *Bullock* v. *Railroad,* 105 N. C., 180 ; *Rigler* v. *Railroad,* 94 N. C., 604.

It may often happen that greater care is obviously necessary to avoid injury to a loose frightened animal (as in *Wilson* v. *Railroad, supra*) than to  a man in the same position on or off a track, because if apparently in possession of all of his powers and faculties the man may be reasonably expected, up to the last moment, to avoid peril while the excited animal is as ready to rush into as to run away from danger.

There was no testimony tending to show that the mule was upon the track in front of the car, or that there was any apparent danger that it would rush upon it.    The motorman was the servant of the quasi-corporation which

enjoyed privileges granted to it by the legislature in consideration of its duty to transport passengers safely and more speedily than they are ordinarily carried in vehicles drawn by horses. People, who pay their money in the reasonable expectation of being carried expeditiously, are not to be delayed by every person who ventures to test the nerve of a horse or mule by driving it along the same street on which a company runs its street cars by electricity. Where persons subject themselves to such risks and no collision with the moving car ensues, injuries caused by the conduct of frightened animals are deemed in law to be due directly to their own want of care. Where the animal rushes upon the track in front of the car, the company is answerable for the consequences of a collision only where, by proper watchfulness on the part of the motorman, the danger might have been foreseen and the injury avoided by using the appliances at his command to stop the car. Where there is apparent danger of running over or coming in contact with persons or animals, either the principle announced in *Pickett* v. *Railroad,* decided at this Term or that laid down in *Wilson* v. *Railroad, supra,* may be applicable. But it does not appear that the plaintiff was on or very near to the track. The car, according to the undisputed testimony, was stopped 15 feet distant from the place where his mule had stopped.

There was error in refusing to charge the jury that in no aspect of the evidence could they find in response to the issue that the injury was caused by the negligence of the defendant. For this error a new trial must be awarded.

New Trial.