JAMES McGRATH, PLAINTIFF IN ERROR, v. NORTH JERSEY STREET RAILWAY COMPANY, DEFENDANT IN ERROR.

Argued March 20, 1901—Decided June 17, 1901.

1. One who passes on foot along a crosswalk over a highway is bound to use his powers of observation to discover approaching vehicles, and should exercise a reasonable judgment as to when and how to cross without collision.
2. This rule governs the relation of a pedestrian to all vehicles, including trolley cars.
3. Trolley cars have characteristics of their own, but are not therefor set apart, for legal treatment, in a class by themselves. Their peculiarities are circumstances that have sometimes to be taken into account in applying the general rule to a particular case.

---

On error to the Essex County Circuit Court.

For the plaintiff in error, *Samuel Kalisch.*

For the defendant in error, *George T. Werts.*

The opinion of the court was delivered by

ADAMS, J.   The plaintiff, while crossing Market street, in the city of Newark, was injured by a car of the defendant, and has brought suit to recover damages.   The trial judge directed a verdict for the defendant, and gave his reason for doing so in these words:

"The conclusion I have reached in this case, upon the plaintiff's own testimony, is that he is not entitled to recover. He says that he did not look for a car on the track, except as he left the sidewalk.   I think that in a crowded condition of the street, as it was at that time, with the car where it must have been, as described by the witnesses who saw him, it was the duty of the plaintiff to look after he left the sidewalk.   He must be assumed to know (the testimony does not show) that cars run frequently on Market street, and, of course, he must know the danger in a crowd of that kind. If he had seen the car at a standstill, and then had been overtaken because the car gave a sudden spurt, it might have been argued that he had a right to suppose that the car would continue to stand still, and that they were giving to the crowd, and to him as one of the crowd, the right to cross. But that was not the situation.   He says he did not see it; others there did see it, and I think if he had used the precaution that a reasonable man would use, this accident would have been avoided."

The plaintiff excepted to the direction of a verdict for the defendant, and has assigned error upon the exception.

These observations of the trial judge embody three propositions—that the plaintiff, in attempting to cross Market street, was bound to be careful; that the evidence tended to show that he was not careful, and that it pointed so plainly to this conclusion that the jury, if the case had gone to them, could not reasonably have reached the opposite conclusion. The first proposition is matter of law; the others are matter of fact.

The trial judge took a correct view of the legal rule.   A pedestrian, while walking in the highway, is bound to be careful.   The law is settled, though its application is not

always easy. In *Newark Passenger Railway Co.* v. *Block,* 26 *Vroom* 605, a case decided in 1893, Mr. Justice Magie, in delivering the opinion of this court, said:

"We must recur to the general rule which requires one, in exercising his lawful rights in a place where the exercise of like rights by others may put him in peril, to use such precaution and care for his safety as a reasonably prudent man would use under the circumstances. From this rule it may be said in general that one who passes on foot along a sidewalk or path of a highway must use his powers of observation in respect to other passers thereon, and a reasonable judgment to avoid collision. In crossing the roadway a foot passenger must likewise use his powers of observation to discover approaching vehicles, and a like judgment when and how to cross without collision. In the latter case doubtless the degree of care required exceeds that required in the former case, not because the right of the foot passenger and the right of the driver of a vehicle differ, but because of the circumstances. The vehicle usually travels at a greater speed—it cannot be so quickly stopped or diverted from its course; a street car cannot deviate from its track; while the passer on foot may quickly stop, turn aside, or even retrace his steps."

The rule thus stated governs the relation of a pedestrian to all vehicles. It its true that a trolley car has characteristics of its own. It is a large, smooth-running vehicle of great weight. Its momentum is therefore high, even when its velocity is low. On the one hand, it cannot deviate from its track. On the other hand, its rate of speed is under prompt control. These peculiarities, however, are not criteria by which trolley cars are set apart, for legal treatment, in a class by themselves. They are merely circumstances that have sometimes to be taken into account in applying the general rule to a particular case.

As the ruling that is said to be erroneous was made after the evidence was all in on both sides, it follows that the question is not whether the plaintiff, on his own testimony, or even on his own case, appears to be not entitled to recover, but whether, on the whole case, he appears to be not entitled

to recover—that is, whether, from all the evidence, it so clearly appears that he was not entitled to recover, that a jury could reasonably and legitimately arrive at no other result. For the purposes of this inquiry any disputed question of fact is to be resolved in favor of the plaintiff.

The accident occurred between nine and half-past nine o'clock in the evening of Wednesday, August 16th, 1899, near the intersection of Broad and Market streets, the busy center of a great city. These streets are at right angles to one another; Broad street running north and south, and Market street east and west. Broad street is eighty or ninety feet wide. Along the central portion of each street is a double line of trolley car tracks, which also connect by curves to the north and east, over which cars pass out of Broad street, on the north, into Market street, on the east, and in the opposite direction. On the evening of the accident the plaintiff was crossing Market street, from south to north, on the crosswalk that is in a line with the east sidewalk of Broad street. It was dark; many persons were on the crosswalk; and a procession, with music or to the beating of a drum, was moving west, toward Broad street, along the north part of Market street, and had approached near enough to the east line of Broad street to attract attention and tend to throng that locality. The time, place and circumstances were such as to put a careful man on his guard. As the plaintiff stepped down from the southern curb of Market street to the crosswalk he looked to the west and saw no eastbound car. He went on for twelve or fifteen feet, along the crosswalk, at an ordinary pace, and so came to the south rail of the eastbound track. This operation would take not more than seven seconds. As the plaintiff stepped with his left foot across the south rail he was struck by a car that had come along Market street, from some place west of Broad street, had crossed the entire width of Broad street, and had made one stop in transit. The exact place and purpose of this stop are in some doubt. Cook, the motorman, a witness for the defendant, said that he stopped the car because there was a car passing in front of him. This does not seem con-

sistent with his other statement that he stopped within five feet of the crosswalk, "because people were crossing." It may be that the word "car" in his printed testimony should read *crowd*. So read, his evidence is consistent with itself and with that of other witnesses.

O'Connor, a police officer on duty at the crossing, who was called as a witness by the defendant, said that the car "stopped on the other side of the crosswalk," at the place where there is a curve in the track, about ten feet, he judged, west of the crossing. Winans, a witness for the plaintiff, said that the car stopped about five feet from the crossing, "to let people go over the crossing," and that it stood there until some people had crossed. Kuhn, a police officer, who was a witness for the plaintiff, said that he first noticed the car when it was about in the center of Broad street, coming across. He is silent as to any stop. The counsel for the plaintiff argued the case on the theory that the car came to a full stop, before the accident, a few feet west of the place where the plaintiff was struck. This is the fair result of the testimony, for three witnesses swore to the fact, and no one denied it.

The plaintiff did not see the car until the instant of the accident. He testified, "a car was coming down, and came so suddenly I didn't realize anything until it struck me." He said, also, that while he was on the crosswalk he looked only toward the east. The following is an extract from his testimony:

"*A.* I kept looking east, watching the cars coming up.

"*Q.* Didn't you look west at all?

"*A.* No, sir; not after I stepped off the sidewalk onto the crossing; I kept walking along.

"*Q.* You were looking for cars coming on the furthest track?

"*A.* Yes, sir.

"*Q.* The track you had not reached?

"*A.* The track I hadn't reached—the furthest track.

"*Q.* But you did not look for a car on the track you were about to cross.

"*A.* Not at that time.

"*Q.* And you never looked for a car on that track, excepting as you left the sidewalk?

"*A.* No, sir.

"*Q.* That was the last time?

"*A.* That was the last time.

"*Q.* And you say there was quite a crowd there?

"*A.* Yes, sir.

"*Q.* How much of a crowd would you say?

"*A.* I couldn't give you any idea.

"*Q.* I don't mean in numbers, but were they standing around pretty thick?

"*A.* Standing around pretty thick; yes.

"*Q.* So that in walking over you had to go slowly?

"*A.* Yes.

"*Q.* You had to pick your way?

"*A.* No; I kept walking right along at a nice, ordinary walk, I should call it.

"*Q.* Where was this crowd of people that you speak of?

"*A.* Some on the corner and others crossing over.

"*Q.* Ahead of you, some of them?

"*A.* Ahead and behind."

Two conclusions seem inevitable. One is that if the plaintiff, just before the accident, had not been inattentive to his surroundings, he must have seen this eastbound car, within a few feet of him, either in motion or at rest, on the track upon which he was about to step. The car was a large object. Its lights made it conspicuous. There was no impediment to vision. Unfortunately the plaintiff was looking away from the car, and so did not see it.

The other conclusion that results from the testimony is that the plaintiff, when he looked to the west, before stepping off the curb, and saw no eastbound car, must have looked carelessly. He testified that when he looked to the west some trucks were coming from that direction, but no cars; that there was no car in the immediate vicinity—that is, east of the Broad street track; that he saw no cars to the west of him at all; that he didn't look a considerable

distance, but just looked up; that he supposed that he saw across Broad and Market streets; that he saw to the east of the track, meaning, probably, the tracks in Broad street; that he saw no car coming across Broad street. The time that elapsed between his leaving the curb and the accident was brief; only what a man would occupy in walking twelve or fifteen feet at a "nice, ordinary walk." The car, just before he encountered it, had crossed a street eighty or ninety feet wide. In doing so it had made a full stop and had waited an appreciable time to allow pedestrians to pass in front of it at a crossing, or, perhaps, for another car to get out of its way. It had then been started again, and had gone forward. At the moment of the accident its fender had reached a point at least as far east as the easterly side of the crosswalk, the width of which does not appear, but which the counsel for the plaintiff estimated, on the argument, at six feet. It is inconceivable that this car, when the plaintiff looked toward the west, was not somewhere within the range of prudent observation.

It is argued on behalf of the plaintiff that his failure to look to the west, while he was on the crosswalk, is unimportant; for, it is said, if he had looked to the west, he would have seen only a car standing still, in front of which he might assume that he could walk with safety, and which, when it was set in motion again, came on without signal and with a sudden and dangerous burst of speed. In other words, the plaintiff's inattention is immaterial, because attention would not have saved him. This argument is too conjectural to be entirely satisfactory. But, aside from that, the evidence, fairly read, does not sustain it. Gartland, who was walking with the plaintiff, said that the car was going "at a pretty good speed," and that he heard no bell. Kuhn said that "it came at pretty sudden speed" for fifteen or twenty feet; that "it was going, on an average, slow, but faster than they go across those crossings;" that "it was going faster than regular speed"—that is, than the speed usual at that crossing. Winans said: "It pulled very quick, a good, sudden jerk." Van Houten, a police officer, off duty, who was a witness for the plaint-

iff, said: "It was coming, I thought, faster than cars usually come over that crossing," and that he heard no bell; that the car was coming "at a pretty good rate, I thought, for a car to be coming across there; pretty lively, I thought, for a car that was in the street at that time; cars, as a general thing, come over that crossing very slow, but this was not coming slow, I didn't think." This testimony does not tend, in a substantial sense, to prove that the car was moving at a speed so high as to be perilous to a careful pedestrian, or make probable the hypothesis that if the plaintiff had not been negligent, he would, nevertheless, have been hurt.

The direction of a verdict for the defendant was not erroneous. The judgment is affirmed.

*For affirmance*—THE CHANCELLOR, VAN SYCKEL, DIXON, GARRISON, GUMMERE, COLLINS, FORT, HENDRICKSON, BOGERT, ADAMS, VREDENBURGH, VOORHEES, VROOM. 13.

*For reversal*—None.