The plaintiff, Susan Crenshaw, brought this action to recover damages for injuries she received and which were caused, as she alleges, by the negligence of the defendant. At the time of the occurrence she lived on the east side of Bailey Street, in the city of Asheville. The track of the defendant's railway is laid on that street, which at and for some distance on either side of the place of the accident runs north and south. The feme
plaintiff, on 7 August, 1901, and late in the afternoon of that day, had gone from her home, across the track of the defendant, and to the opposite, or west, side of Bailey Street to buy apples from one Bryson, who was selling them from a wagon drawn by a mule which was headed toward the north. While Mrs. Crenshaw was standing at the rear of the wagon, making her purchase, one of the defendant's cars, proceeding south, came in sight. The mule was frightened and became unruly. He backed the wagon against the plaintiff, who retreated down *Page 220 
(316) the street. She then turned and signaled the motorman by throwing up her hand, but did not pay any attention to the car after that time. The evidence tended to show that the car was running at a moderate rate of speed. The motorman had slackened the speed by applying the brakes, and when Bryson had taken hold the reins and started up the street with the mule, and just before the car passed the plaintiff, he released the brakes. The plaintiff was then about 12 feet from the track, directly out, and the car was from 14 to 18 feet north of a point on the track immediately opposite where the plaintiff was at the time. The mule was then under the control of its driver. If the brakes had not been released the car could have been stopped within 6 or 8 feet. The car was running slowly all the time at that place, about as fast as a man can walk. The plaintiffs' witness, Bryson, testified, in substance, that the feme
plaintiff was on the west side of the street, at the rear end of his wagon; the car came down the street and the mule began to back as if it would run the wagon into the car, and the lady ran down the street; that she had gone from 16 to 20 feet, when he got the mule straightened back and started up the street. The mule had backed the wagon from the west side toward the east side of the street, and close to the car as it was passing, something like 2 feet, or 18 inches from the car as it passed the wagon; and at this time, when the car was closest to the wagon, he was between the wagon and the car, and the plaintiff was from 16 to 20 feet from the wagon and down the street near the west sidewalk, on the west side of the passing car; and that she was in that position the last time he saw her.
The plaintiff's witness, Kosky, testified that when the mule began to back the wagon the plaintiff ran down the street on the west side, and then across the street toward the east, and struck the car near the front right-hand corner.
(317) The evidence further tended to show that the collision with the car caused the feme plaintiff to fall, and the wheels on one side passed over her feet. The injury was received on the west rail of the track, 36 to 40 feet from the point where the plaintiff was at the wagon when the mule began to move.
The defendant's testimony was to the effect that, as the car approached, the mule showed signs of restiveness, and turned somewhat toward the west sidewalk; the motorman then had his car under control, and the plaintiff was 12 or 15 feet from the car track and near the rear end of the wagon; about the time the car was passing the mule and wagon, the plaintiff started down the street on the west side, near the curbing, and after having gone some distance she stopped a moment and then turned and ran diagonally across the street toward the car track, where she collided with the side of the car, just back of the front steps, was *Page 221 
knocked down and injured. The motorman testified that he did not see the plaintiff after he passed the wagon until after she ran into the side of the car and was falling. When he passed her she was standing 12 feet from the car, and, seeing that everything was all right, he looked ahead and did not see the plaintiff again until a lady screamed and attracted his attention. He then looked around and saw her falling. He also stated that it was 4 or 5 feet from where he was standing on the front platform to the point where she struck the car. The evidence further tended to show that the street at the place where the accident occurred was 26 feet wide between the curbs; the railway track, which was laid on the east side of the street, about 1 1/2 feet from the east curbing, was about 5 feet wide, and the car projected over the track about 1 foot at the widest point. The evidence also tended to show that the plaintiff was in no actual danger after she moved away from the wagon and started to run, either diagonally across or straight down on the west side and then diagonally across the street toward the (318) car, where she was injured.
Mrs. Fisher testified: "I saw the car coming down the street, about Mr. Heston's house; as it got a very little closer, the mule began to shy at something or to throw up his head and shy a little. The man stepped around the side of the wagon and took hold of the bridle. By that time the car was very close to them. He had slowed up some, was not running fast, and Mrs. Crenshaw started to leave the wagon. She turned from the wagon and went down the street almost opposite to my father's gate. I thought she was coming into my lot, and when I saw she turned toward the car I screamed, but before I could attract her attention she had reached the car, and the handle on the body of the car, back of the platform, struck her left shoulder and threw her back from the car, and she struck on her right side." She further stated, in substance, that the plaintiff was running with her head down, and just as she reached the car she slowed up and threw up her hands and said, "Oh, God!" and at that moment the car struck her and she fell on the ground. When she turned, near the gate, she went rather diagonally toward the car, or southeast. At the time she turned suddenly she was the width of the street from the car (about 15 feet), and the car was then about opposite to her. The witness screamed when the plaintiff turned and started toward the car, but she reached the car before the witness could attract her attention. The evidence tended to show that the plaintiff was very much frightened as she left the wagon and went down the street.
The defendant, in apt time, moved, under the statute, to dismiss the action. The motion was overruled, and the defendant excepted. The jury returned a verdict for the plaintiff, and judgment having been entered thereon, the defendant appealed. *Page 222 
After stating the case: The counsel for the defendant abandoned all assignments of error except those which raised the question whether, upon the evidence construed most favorably for her, the plaintiff is entitled to recover. The testimony is voluminous, and we have held the case over from the last term in order that we might give it a most careful examination. There are few conflicts in it, and they are slight and not very material. When every disputed question of fact is resolved in favor of the plaintiff, it does not seem to us that she has made out a case. Indeed, it is clear to us that she has not, whether we consider the facts with reference to any omission of duty on the part of the defendant or with regard to her own negligence as the efficient and proximate cause of the injuries received. No fault is imputed to the motorman in the management of his car up to the time that the plaintiff left the wagon and was apparently out of danger from any apprehended conduct of the mule. Indeed, all of the evidence shows, and the case was argued upon that theory here, that the motorman had slowed down by shutting off the power and applying the brakes, so that he had the car completely under his control, and the speed had been so reduced that it was moving very slowly as the point of danger, from the backing of the mule, was being passed. He acted promptly, and showed every disposition to avoid an accident. Nor do we find any evidence in the case which tends to show that he relaxed his efforts in this respect at any time before the plaintiff was injured. We are not permitted to decide upon mere conjecture or to guess how or by what combination of circumstances an injury may have been caused by the defendant's negligence. The burden is always on the plaintiff to show by a preponderance (320) of the evidence that the defendant committed a negligent act and that it was the proximate cause of the injury. The two facts must coexist and be established by the clear weight of the evidence before a case of actionable negligence is made out. Brewster v.Elizabeth City, 137 N.C. 392. The kind of proof which must be forthcoming, in order to establish the issues in favor of the plaintiff, was considered recently by us in Byrd v. Express Co., 139 N.C. 273, where we said: "There must be legal evidence of the fact in issue, and not merely such as raises a suspicion or conjecture in regard to it. The plaintiff must do more than show the possible liability of the defendant for the injury. He must go further and offer at least some evidence which reasonably tends to prove every fact essential to his success." The rule upon this subject is stated in another form by Justice Douglas, *Page 223 
for the Court, in Spruill v. Insurance Co., 120 N.C. at p. 147, as follows: "The action of the judge (in directing a verdict) can be sustained only under the doctrine, firmly established in this State, that where there is no evidence, or a mere scintilla of evidence, or the evidence is not sufficient, in a just and reasonable view of it, to warrant an inference of any fact in issue, the court should not leave the issue to be passed upon by the jury, but should direct a verdict against the party upon whom the burden of proof rests." Judge Gaston thus stated it inCobb v. Fogalman, 23 N.C. 440: "Although the boundary between a defect of evidence and evidence confessedly slight be not easily drawn in practice, yet it cannot be doubted that what raises a possibility or conjecture (as to the existence) of a fact never can amount to evidence of it." S. v. Vinson, 63 N.C. 335. The rule as laid down in Spruill v.Insurance Co. is the one stated in Wittkowsky v. Wasson, wherein JusticeRodman says: "There must be evidence from which (the jury) might reasonably and properly conclude that there was (321) negligence." To the same effect are S. v. Powell, 94 N.C. 968, and S. v. Satterfield, 121 N.C. 558. All the cases cited approve the rule as formulated by Justice Maule in Jewell v. Parr, 13 C. B. (76 E. C. L.), 916, as follows: "The question for the judge is not whether there is literally no evidence, but whether there is none that ought reasonably to satisfy the jury that the fact sought to be proved is established." Ryderv. Wombwell, L. R., 4 Exch., 32. This rule is not intended, as said byJustice Douglas in Spruill v. Insurance Co., to interfere with the rightful province of the jury to pass upon the weight of the evidence, but it assumes that the determination of its "character and legal effect." belongs to the court, and requires that this preliminary question be first decided before the evidence is submitted to the jury. The matter is discussed byJustice Connor for the Court, with a full citation of the authorities, inLewis v. Steamship Co., 132 N.C. 904. In whatever form the rule may be expressed, we do not think the plaintiff has satisfied its requirement in this case. We may well assert that there is no evidence at all, not even a scintilla, and certainly none when the testimony is considered "in any just and reasonable view of it," to warrant an inference of negligence on the part of the defendant. All of the evidence, on the contrary, tends to show that the danger to the plaintiff from the backing of the mule had passed when the motorman released the brakes, and nothing, we think, occurred after that time which required that he should keep an eye on the plaintiff to prevent any harm coming to her from a collision with the car. She was proceeding down the street, whether straight down or diagonally makes no difference. As her position was, in fact, a safe one; as she was in possession of her faculties and of her senses of sight and hearing *Page 224 
(322) and in full view of the car, which she knew was passing; as it was daytime and her vision was unobstructed; as there were places of safety on the opposite side of the street from the railway track, or the west side, if there was, in fact, any danger, and she was seeking a place of safety, and as there was no conceivable reason why she should have crossed the track just at that time, the conductor had the right to assume that she would keep in the safe way and not deliberately walk into the car, as she did, or even attempt to cross the track in front of it, if such had been the case. Every reason appears in this case why he should have been thus impressed by the then situation. There is no evidence, within the rule we have already stated, that he saw her at the time she attempted to cross the track and walked against the car. He was standing on the front platform, about 4 feet in front of her, when she walked against the car. Just as the plaintiff was stricken, either by the side of the car or by the handhold which is fastened to the side, he heard a lady scream, when he looked back and saw the plaintiff falling. The car was then stopped in a brief space of time and distance. The motorman knew, or must have known, that the plaintiff was fully aware of the presence of the car, because she had hailed him when danger first appeared and an accident seemed to be imminent; but knowing also that the danger had passed, and that the apple vender had left with his mule, leading him up the street in an opposite direction from the plaintiff, he had a right to suppose that the plaintiff, being apparently and really able to do so, would take care of herself, and, having successfully escaped from one danger, would not walk into another so easily discernible by a mere glance of the eye. This Court has so treated the question in passing upon a similar state of facts. Mathews v. R. R.,117 N.C. 640; Markham v. R. R., 119 N.C. 715; Pharr v. R. R., 133 N.C. 610; Meredith v. R. R., 119 N.C. 108 N.C. 616; Syme v. R.(323) R., 113 N.C. 558; High v. R. R., 112 N.C. 385; Parker v. R. R., 86 N.C. 222; Doster v. R. R., 117 N.C. 651. See, also,Hall v. Street R. R., 168 Mass. at p. 463. The fright of the plaintiff at the time the mule shied, if it continued to the time of the accident, was not caused by any negligence of the defendant, and is in no way attributable to any wrong committed by it. It is something for which the defendant cannot be held responsible. Dummer v. R. R., 108 Wis. 589. His Honor was therefore right in charging the jury that the "doctrine of sudden peril" has no application to this case, and that the motorman was not bound to anticipate that the plaintiff, whether frightened or not, would leave a place of safety or, having left it, would go into a place of danger, when she might just as well have gone in another direction. And further, the motorman was not bound to presume that the plaintiff, whether frightened or not, would run into the car, when she could easily *Page 225 
see and hear it. He had the right to presume, even to the last moment, when it was too late to save her, that she would not do so reckless an act. Highv. R. R., supra; Russell v. Street R. R., 83 Minn. 304; Parker v. R. R.,supra. If she had sufficient presence of mind to escape from the danger caused by the shying of the mule, why not enough to avoid the greater danger of a collision with the car?
There is no evidence, therefore, from which any inference can fairly or reasonably drawn — not even a scintilla of proof — that the plaintiff was so situated and circumstanced that she could not have heard and seen the car, or that she could not have looked or listened. We make an extract from her own testimony in this connection, so as to see what is her version of the facts:
"Q. I believe, on your previous examination, you said something like this, did you not? You stated that when the man first mentioned the car, you looked up and saw it was coming about halfway (324) between the Heston house and Redwood's house? A. Yes.
"Q. You answered that, `Yes'; is that the way you recollect it now? A. Yes.
"Q. Listen to this: `About how near was that from you?' You answered, `I don't know. I cannot estimate the distance. I failed to say that when I got out and threw up my hand and the car was coming along about Mr. Redwood's place, it came just over me in a flash that this mule was going to act badly; I must get away before the car gets there.' Do you remember that? A. Yes.
"Q. Do you remember this? `So I got out of the way of the wagon, and the first thing I did was to throw up my hands.' A. Yes.
"Q. Is that correct? A. What did you say?
"Q. `So I got out of the way of the wagon, and the first thing I did was to throw up my hands.' Do you remember that? A. Yes.
"Q. Is that the way you remember it now? A. Yes.
"Q. You were out of the way of the wagon at that time? A. I was out after I moved on, but I wouldn't have been had I stayed still, for it was backing toward me. That is what caused me to move — because it was coming."
And again:
"Q. You do not mean to say that you were crossing the track at the time the car struck you? A. Of course, I did not mean that.
"Q. The complaint is inaccurate when it purports to give your statement that you were crossing the track? A. Yes."
But if it be conceded that there was any negligence in running the car, it cannot be successfully denied that the plaintiff was plainly guilty of such concurring negligence on her part, up to the very moment *Page 226 
(325) of the accident, as to bar her recovery. Indeed, she had the last clear chance for saving herself from harm, and failed to avail herself of it, and she thus became, in the eye of the law, the responsible author of her injury, her negligent act being regarded as its proximate cause. This case is much stronger in favor of the defendant than those we have cited above from our own reports, as in them it appeared that the plaintiff, who was injured, was at the time on the track, while here the plaintiff was not on the track, but walked into the side of the car.
Speaking of the rights of foot passengers on streets, and the duty to use their powers of observation when approaching vehicles or street railways, the Court, in R. R. v. Block, 55 N.J. L., 612, said: "The degree of care required in approaching and crossing street railways exceeds that required in approaching and passing foot passengers, not because the right of the foot passenger and the right of the driver of a vehicle differ, but because of the circumstances. The vehicle usually travels at a greater speed — it cannot be so quickly stopped or diverted from its course; a street car cannot deviate from its track, while a passenger on foot may quickly turn aside, or even retrace his steps." On this part of the case the decision in Parker v. R. R.,86 N.C. 222, and Bessent v. R. R., 132 N.C. 934, are very much in point. A rational being should not needlessly venture into places of peril, and if he does, he should use proper precautions to guard against injury. If he fails to do either, and suffers damage in consequence thereof, it must be referred to his rash act and gross inattention to his own security as the true and efficient cause. Express Co. v. Nichols, 3 N.J. L., 439. But numerous courts have stated this principle with substantial uniformity, and we find that it has been applied to facts not unlike those now presented to us, and to the extent of denying the plaintiff's (326) right of recovery. Canedo v. Street R. R., 52 La. Ann., 2149; Russell v. Street R. R., 83 Minn. 304; Doherty v. Street R. R.,118 Mich. 209; McQuade v. Street R. R., 39 N.Y. Supp., 335; Moserv. Traction Co., 205 Pa. St., 481; McGrath v. Street R. R., 66 N.J.L. 312;Hall v. Street R. R., 168 Mass. 461; Murray v. Transit Co.,176 Mo., 183; Itzkowitz v. R. R., 186 Mass. 142; Dummer v. Electric R. R.,108 Wis. 122; Stowers v. Street R. R., 21 Ind. App. 434; Fritz v. Street R.R., 105 Mich. 50. See, also, Doster v. Street R. R., 117 N.C. 651. To use the language of the Court in R. R. v. Freeman, 174 U.S. at p. 383: "She was (under the circumstances) bound to listen and to look before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into a place of possible danger. Had she used her senses, she could not have failed both to hear and to see the train which was coming. If she omitted to use them, and walked thoughtlessly upon the track, she was guilty of culpable negligence, *Page 227 
and so far contributed to her injuries as to deprive her of any right to complain of others. If, using them, she saw the train coming, and yet undertook to cross the track instead of waiting for the train to pass, and was injured, the consequences of her mistake and temerity cannot be cast upon the defendant." But it appears that the plaintiff was aware of the passing of the car, and if she held her head down as she attempted to cross the track, her inattention to her surroundings and her negligence were the more culpable, there being nothing, as we view the evidence, to prevent her from taking proper care of herself. We do not decide that it is negligence in all cases, as matter of law, not to look and listen when about to cross a street railway track, as that question is not before us, and will depend for its correct (327) solution upon the particular circumstances under review at the time. We hold, though, that upon the undisputed facts of this case, reasonable minds, guided by a sense of fairness, can reach but the one conclusion, which is that the defendant's own negligence was the immediate and proximate and, we think, the only cause of her injury.
As much as we deplore the unfortunate accident which has befallen the plaintiff, we are not permitted to relax those rules of the law which must be applied inflexibly and impartially to all cases coming within the principles they have established. "It is impossible," said a learned and a just judge, "to consider the plaintiff's injuries without a feeling of profound sympathy. His misfortune was a severe one, but sympathy, although one of the noblest sentiments of our nature, which brings its reward to both the subject and the actor, has no proper place in the administration of the law. It is properly based upon moral or charitable considerations alone, and neither courts nor juries are justified in yielding to its influence in the discharge of their important and responsible duties. If permitted to make it the basis of transferring the property of one party to another, great injustice would be done, the foundation of the law disturbed, and anarchy result. Hence, every proper consideration requires us to disregard our sympathy and decide the questions of law presented according to the well-settled rules governing them." Laidlaw v. Sage, 158 N. Y., at p. 104. The true function of judge and jury could not be better stated.
Street railway companies should be held to a strict accountability for the management of their cars and for the performance of their duty to the public which they serve. The care and vigilance required of them should be proportioned to the increased danger and hazard which the nature of their business creates; but while they are, and properly should be, thus answerable, under the law, for any breach of duty, we should not forget that they are also equally under its protection, and should not be made to pay when nothing is due. (328) *Page 228 
The court erred in refusing to nonsuit the plaintiff. We must therefore reverse its judgment and direct, in accordance with the statute, that the action be dismissed.
Reversed.
Cited: Boney v. R. R., 145 N.C. 252; Beach v. R. R., 148 N.C. 168;Aderholt v. R. R., 152 N.C. 416; Maguire v. R. R., 154 N.C. 386; Exumv. R. R., ib., 441; Patterson v. Power Co., 160 N.C. 580; Ward v. R. R.,167 N.C. 158; Finch v. Michael, ib., 325; McNeill v. R. R., ib., 395;Ridge v. R. R., ib., 517.