SAM WARE v. SOUTHERN RAILWAY COMPANY.

(Filed 8 May, 1918.)

**Railroads—Negligence—Instructions — Evidence — Proximate Cause—Questions for Jury.**

Where the evidence tends to show that the plaintiff, an experienced section hand, ordinarily left a moving handcar of the defendant railroad to turn a switch for it to pass and boarded it again as it was running, under orders of his foreman in charge, and that he was injured under such circumstances by attempting to board the car running 7 or 8 miles an hour, driven at the time by gasoline, and that he was clumsy in doing so on this occasion, the mere fact that he attempted to board the car thus running and that he was ordered by his foreman to turn the switch, does not warrant an instruction to the jury to answer the issue of defendant's negligence in the affirmative, the question of negligence being for the jury to determine under the circumstances, as well as the question of the proximate cause of the injury.

CLARK, C. J., dissenting.

APPEAL by defendant from *Harding, J.,* at the November Term, 1917, of GUILFORD.

This is an action to recover damages for personal injury.

The plaintiff was a section hand in the employment of the defendant, and was engaged in working upon the section near High Point under Foreman T. W. Pierce. He had been engaged in this work for more than two years, and on 27 October, 1917, the foreman with four section hands, including the plaintiff, was taking two cars from the belt-line which runs around a section of the city of High Point onto the main line which leads from High Point to Asheboro. The foremost of the two cars was propelled by a gasoline motor; attached to it in the rear was what is known as a "hand" or "push car," which is a flat platform resting upon two trucks and has no motive power, but is ordinarily propelled by the men walking upon the tracks and pushing the car in front of them. On this occasion, it was attached to and propelled by the gasoline car. When the cars reached a point near the junction between the main line and the belt line, the plaintiff jumped off and went forward to the switch in order to change the switch so that the cars might leave the belt line and go upon the main line.

The evidence of the plaintiff is that the cars did not stop, and that as they were passing him the foreman directed him to jump on, and that he was injured in attempting to do so; that he had been jumping off and on about two years in changing the switch.

According to the plaintiff's testimony, they were running about six or seven miles an hour.

According to the defendant's testimony, they were running from four to five miles an hour.

His Honor charged the jury, among other things, as follows: "If the plaintiff has satisfied you by the greater weight of the evidence that this car was going at a dangerous rate of speed for him to get off and on the car, six or seven miles an hour, the court charges you if defendant, through its section master, ordered the plaintiff to get on this car, that would be negligence on the part of the defendant, and you should answer the issue 'Yes.'"

The defendant excepted. There was a motion for judgment of nonsuit, which was overruled, and the defendant excepted.

The jury returned the following verdict:

1. Was the plaintiff injured by the negligence of the defendant, as alleged? Answer: "Yes."

2. Did the plaintiff contribute to his injury by his own negligence, as alleged in the answer? Answer: "Yes."

3. What damage, if any, is the plaintiff entitled to recover of the defendant? Answer: "$300."

Judgment was entered upon the verdict in favor of the plaintiff, and the defendant appealed.

*John A. Barringer for plaintiff.*
*Wilson & Ferguson for defendant.*

ALLEN, J. The case of *Myers v. R. R.*, 166 N. C., 234, decided by a unanimous Court, is a controlling authority on both questions raised by the appeal, sustaining the exception to the charge and overruling the exceptions to the refusal to nonsuit the plaintiff.

In the *Myers case* the plaintiff was injured while attempting to get on a freight train running six or eight miles an hour, in obedience to the command of his superior, and upon appeal a refusal to nonsuit was affirmed.

It also appears from an examination of the original record that his Honor charged the jury that if they found from the evidence that the plaintiff was an employee of the defendant; that he was directed by his superior to get on the moving train; that he attempted to do so in obedience to the order given him; "that the train was running at a speed of about seven miles an hour, and that a reasonable man could have seen that it was dangerous for a man to get on a moving train going that fast"; that he used due care and caution in trying to do so, and was injured, and this was the proximate cause of the injury, it would be the duty of the jury to answer the first issue "Yes."

This charge was excepted to, and the exception was relied on in the brief, and the Court, without discussing each exception separately, says: "We have examined with care the exceptions set out in the record to the reception and rejection of evidence, and also to the charge of the court, and we think the case was substantially tried under the well-settled principles of law obtaining in this State."

It will be observed that in the charge, which has been approved, his Honor did not determine the fact that it was dangerous for an employee to get on a freight train moving seven miles an hour, nor did he declare as matter of law that to direct him to do so was negligence, nor did he instruct the jury to answer the first issue "Yes" without a finding that the negligence of the defendant was the proximate cause of his injury. On the contrary, he left the question of danger to the jury, under the rule of the reasonable or prudent man, and incorporated the principle of proximate cause as secondary before the issue could be answered in favor of the plaintiff, while in the charge now before us his Honor declared a speed of six or seven miles an hour to be dangerous and eliminated the finding of proximate cause altogether, which is an essential fact involved in the first issue.

"The authorities fully sustain the position of the plaintiff, that it is negligence to run a train without a headlight at night along a track frequented by the public, but a plaintiff cannot recover upon proof of negligence alone. He must go further and prove that the negligence complained of was the cause of his injury. *Crenshaw v. R. R.,* 144 N. C., 314; *Pritchett v. R. R.,* 157 N. C., 101; *Henderson v. Traction Co.,* 132 N. C., 784.

"In the first of these cases the Court said: 'The burden is always on the plaintiff to show by a preponderance of evidence that the defendant committed a negligent act, and that it was the proximate cause of the injury. The two facts must coexist and be established by the clear weight of the evidence before a case of actionable negligence is made out. *Brewster v. Elizabeth City,* 137 N. C., 392'; in the second: 'In all courts where the common law is administered it is held that one cannot recover damages upon proof of negligence alone, and that he must proceed further and show that the negligence of which he complains was the real proximate cause of the injury'; and in the last: 'It is generally held—and this we regard as the doctrine—that the element of proximate cause must be established, and it will not necessarily be presumed from the fact that a city ordinance or statute has been violated. Negligence, no matter in what it may consist, cannot result in a right of action unless it is the proximate cause of the injury complained of by the plaintiff.' " *McNeill v. R. R.,* 167 N. C., 395.

That the question of proximate cause was material and in controversy is shown by the evidence of the defendant that the plaintiff was injured by his own carelessness, which caused him to stumble and fall on the car, and by the answer of the issue of contributory negligence in favor of the defendant.

There was less reason for submitting to the jury the question of the danger of getting on the moving car in the *Myers case* than in this, because the plaintiff in this action is an employee of experience who had for two years been jumping off and on the car when in motion without injury, while in the *Myers case* the injured employee was performing different services, some of them not connected with the operation of trains, and he was told to get on a heavy freight train, and in this on a low gasoline car. The danger was more apparent and the experience and skill of the employee less in the one case than in the other.

It is also recognized in *Reeves v. R. R.,* 151 N. C., 318, that the rule which usually prevents a recovery by one injured while getting on a moving train does not apply in strictness to experienced trainmen, and if to do so cannot be declared to be contributory negligence as matter of law, why should a direction to get on under the same conditions be arbitrarily declared to be negligence, instead of leaving the question to

the jury to say whether the officer giving the order was acting as a reasonably prudent man, considering the speed of the train, the experience of the employee and other relevant circumstances?

This seems to us to be the better and safer rule, and it leaves to the jury disputed facts instead of permitting the judge to decide them.

New trial.

CLARK, C. J., dissenting: It is settled in this and indeed in all jurisdictions that when reasonable men can draw only one conclusion from a given state of facts, whether there is negligence or not, it is a matter of law. *Whitley v. R. R.,* 122 N. C., 987; *Clark v. Traction Co. (Brown, J.),* 138 N. C., 77; *Miller v. R. R.,* 128 N. C., 26; *Chesson v. Lumber Co.,* 118 N. C., 59. It would seem that reasonable men could draw no other conclusion than that there is negligence when a railroad official, taking no risks himself, directs an employee to jump off a motor car "running 6 to 7 miles an hour, to run across the track, open the switch, and get back on the motor running 6 to 7 miles an hour." The judge, therefore, committed no error in telling the jury that if they found such state of facts to find the defendant guilty of negligence. The jury have found that the employee was guilty of contributory negligence in jumping back on the car, though ordered to do so, and have apportioned the negligence in accordance with our State statute, Laws 1913, ch. 6, which was enacted since the decisions which made contributory negligence a complete defense.

It was in evidence that on 27 October, 1917, the plaintiff, who had been working for the defendant for more than two years as a section hand and who during that time had, under the orders of the section foreman in charge, been jumping off and on this motor car while it was running, to open and shut switches, on this occasion was told by his foreman to jump off and unlock the switch and get on again. To obey this order he had to jump off and run across the track, open the switch, and then jump back on the motor car, the motor running when he jumped off and when he jumped on. When the plaintiff attempted to jump back on the car it was running so fast that its momentum threw him off and the car ran over him. When he opened the switch he did not give any signal for the car to come on, for according to the custom and under the orders for two years past the car did not stop either for him to get off or on. He had always gotten back on the front car and, according to custom, attempted to do so again. There was a rear car, but that was loaded with tools and jacks and he had never had orders to get on that car.

The plaintiff had to act in haste before the car should pass him. He ran, according to custom, around the rear car to get on the gasoline or

motor car where he had been riding when he jumped off and on which the other men were riding at the time. Pearce, the foreman, was present on the car all the time, and plaintiff had been acting under his orders for two years past in this very matter of jumping off and on the car while in motion, and if he had not done so the plaintiff certainly could not have retained his job.

In *Pressly v. Yarn Mills,* 138 N. C., 410, the concurring opinion quotes as follows from *Judge Henry Clay Caldwell,* than whom no abler judge has sat upon the U. S. Circuit Bench: "Dangers which needlessly imperil human life and which can be remedied at little cost are not dangers necessarily incident to the operation of a railroad, but are dangers which it is the duty of the company to remove. The necessities of laboring men are often very great. The necessity of providing food for themselves and families may drive them to accept employment at the peril of their lives. But the employer does not obtain a license to kill his employees with impunity by proclaiming his purpose to subject them to unnecessary and needless perils—to perils that a reasonably prudent man, having a due regard for human life, would remove. Common humanity demands this. Moreover, the State has an interest in the lives of her citizens, and will not permit an employer needlessly to imperil the lives of employees. The very highest consideration of public policy demands an enforcement of this rule. And the peril is unnecessary and needless where, as in this case, it can be removed at a slight expense. Notice (to employee) of the unnecessary peril in such case goes for nothing. As long as the needless peril is maintained, the employer is guilty of culpable negligence; and when, by reason of such needless peril, an employee is killed, the law presumes he was exercising due care to escape the peril, and the employer is responsible for his death, unless he can prove affirmatively that the employee was guilty of negligence. In such case the death of the employee testifies that he was in the faithful discharge of his duty and in the exercise of due care, and that his death is the result of the needless peril to which he was subjected." Upon this decision a very learned law writer, the author of Thompson on Corporations, says: "It is hard, very hard, to understand how humane judges can balance the question of a slight, very slight, expense to the railroad company against the maiming and death of meritorious laboring men, the tears and agony of their widows, and the beggaring of their orphaned children."

In this case, fortunately, the plaintiff was not killed, but he suffered pain and agony and permanent injury and those dependent upon him will suffer from his diminished capacity for earning caused by his exposure to such dangers by the negligence of the defendant.

A case identical with this on the facts is *Reeves v. R. R.,* 151 N. C., 318, where *Brown, J.,* held that "The rule that persons cannot recover damages for an injury received while getting off and on a moving car does not apply to brakemen acting in the line of their duty." In that case it was held that the plaintiff as a matter of law, was not guilty of contributory negligence. In this instance the jury was more favorable to the defendant railroad than it had a right to claim under the decision in *Reeves v. R. R.,* and found that while the railway company was guilty of negligence in requiring the plaintiff to jump off and on a moving car, yet the plaintiff was guilty of contributory negligence in doing so and apportioned the damages at $300. *Reeves v. R. R.* has been approved. *Heilig v. R. R.,* 152 N. C., 469; *Carter v. R. R.,* 139 N. C., 500. The defendant has no cause to complain.

The defendant excepts, however, because the judge charged the jury that "If the plaintiff has satisfied the jury by the greater weight of the evidence that this car was moving at 6 or 7 miles an hour and the foreman ordered him to get off the car and open the switch and get back on the car without stopping, the car going at the rate of 6 or 7 miles an hour, or if the foreman stood by and acquiesced in his doing so and allowed the plaintiff according to custom to jump off and get back on the car while going 6 or 7 miles an hour, and made no effort to have the car stopped for the plaintiff to get on, that that would be negligence." In this there was no error, for when the facts are found, whether there is negligence is a matter of law. 1 Thomas Neg., 672.

The plaintiff testified that the car was running 6 or 7 miles an hour. To order an employee to jump off and on a car running 6 to 7 miles an hour is evidently dangerous, and the judge properly told the jury if that were found, there was negligence as a matter of law. This is simply applying the law to the facts found. The plaintiff had a right to have this phase of the evidence submitted to the jury. *Brown, J.,* in *Clark v. Traction Co.,* 138 N. C., 77.

The conduct of the defendant was negligence *per se* which made the defendant liable notwithstanding contributory negligence as found by the jury, for it needed no proof that making the plaintiff jump off and on a car moving 6 to 7 miles per hour was dangerous and hence negligence, as a matter of law. Under the recent statutes, both State and Federal, contributory negligence, which the jury finds, is not a bar to recovery.

It may be as well, in this case, to call attention to the meaning of several expressions often used in actions for death or injury caused by negligence.

Negligence *per se* is defined to be negligence as a matter of law upon a given state of facts found or admitted. 1 Thompson Negligence, sec.

10 *et seq.;* 6 *ibid.,* secs. 7393, 7396. There are many instances, both on the part of plaintiffs and defendants, of negligence *per se* given in that work. See Index, Vol. 6, under head "Negligence *per se.*" This always arises where there is a violation of a statute or ordinance, or when the facts of themselves, as in this case, constitute negligence. 1 S. & R. Neg., sec. 27*a*; 4 Thompson Neg., 4416-4418, 4728, 4731; 6 *ibid.,* 7638, 7396. In most cases, of course, it must be found by the jury that such negligence was the proximate cause of the death or injury, that is the defense of contributory negligence is admissible.

In *Troxler v. R. R.,* 124 N. C., 189, and *Greenlee v. R. R.,* 122 N. C., 977, and cases cited to both in the Annotated Edition, and in many other cases, the failure of the defendant to furnish self-couplers or other safety appliances was held to be negligence *per se,* that is, negligence in law, before it was made a statutory duty to furnish such appliances.

In the *Greenlee* and *Troxler cases, supra,* it was held that the failure to furnish self-couplers or other safety appliances was a continuing negligence, and no evidence of carelessness by the injured party while making a coupling, when ordered, without them could be heard in defense. In this case there is no evidence of negligence in the manner of plaintiff in jumping back on the moving car, but if there has been it was not contributory negligence, for there was continuing negligence on the part of defendant in the order given the plaintiff.

Then there is prima facie negligence, which raises a presumption of negligence as the occurrence of a collision, *Marcom v. R. R.,* 126 N. C., 200, and cases cited in the Annotated Edition, and there are many other instances, 29 Cyc., 599. When there is a prima facie negligence the defendant is liable unless he rebuts the presumption by evidence of the negligence is shown to be the proximate cause of the injury. *Moore v. Parker,* 91 N. C., 275, and *Aycock v. R. R.,* 89 N. C., 321, and citations in Annotated Edition.

*Res ipsa loquitur, i. e.,* "The thing itself speaks," is not a presumption of negligence, much less is it negligence *per se,* or negligence as a matter of law, but it is merely evidence of negligence for the consideration of the jury. 1 S. & R. Neg., sec. 58*a.*

The conduct of the defendant in requiring the plaintiff to jump off and on a shifting engine moving at the rate of 6 or 7 miles an hour was negligence *per se,* that is, it was negligence as a matter of law if the jury found, as it did under the instruction of the court, that the car was moving at that speed and that its momentum caused the injury sustained by the plaintiff.

It is true that Pearce testified that the car was moving from 4 to 5 miles an hour. The court did not even instruct the jury that it might be negligence as a matter of fact, to require the plaintiff to jump off

and on when the car was running at that speed. The plaintiff, not the defendant, has cause to complain of this, for the jury might well find on that state of facts that it was negligence on the part of the defendants. To make the defendant liable, it was not necessary that the car should have been going at a high rate of speed as 6 or 7 miles an hour. Yet the charge of the court was in effect to that purpose.

The jury found the plaintiff guilty of contributory negligence in getting back on the car, according to his orders and reduced the damages to $300. If it was contributory negligence for the plaintiff to get off and on a moving train, as a matter of law, then of course it was negligence, as a matter of law, for the defendant to order or permit, or by long custom known to the defendant to require the plaintiff (*Farris v. R. R.,* 151 N. C., 483; *Heilig v. R. R.,* 152 N. C., 469) to get off and on a moving car, whether the speed was 4 or 5 miles an hour as its foreman testified, or at 6 or 7 miles an hour as the plaintiff testified.

In its essential features, the danger to the employee here is similar to that in "kicking" cars, which this Court has always held illegal. This case being under the State statute, while contributory negligence can be apportioned, there could be no assumption of risk. In no case could it be deemed that employees working in such imminent danger voluntarily assumed to do so, but only under the spur of necessity. They know the danger, but do not assume it.

> "Each toad beneath the harrow knows
> Full well where every toothpoint goes."