## STATE v. JOSEPH LANCE.

### (Filed 22 December, 1908).

1. **Appeal and Error—Prejudice—Presumption.**

    When the offense charged is bailable and the trial Judge orders the prisoner, who was then under bail, into custody in the absence of the jury, and afterwards offers to release the prisoner on bail, without reference to the matter in the presence of the jury, the inference is that the Judge considered the bond insufficient, and the presumption is that no error was committed.

2. **Manslaughter—Evidence—Recklessness.**

    When evidence is offered tending to show the reckless indifference of the prisoner on trial for manslaughter, and not to impeach his character, and is relevant to the inquiry as characterizing the act of shooting, which resulted in death, it is competent.

3. **Evidence — Instructions as to Admissions — Objections—Appeal and Error.**

    An assignment of error to the charge of the trial Judge, in stating an admission of fact, will not be considered on appeal, as such matters are for him to settle; and if no such admission was made, objection should be made at the time so that he may correct the error.

4. Instructions—How Construed—Error, in Part—Cured.

　　When a detached part of a charge to the jury, taken by itself, erroneously places the burden of proof upon the defendant, on trial for manslaughter, to show matters of mitigation, excuse, etc., but when construing the charge as a whole this part of the charge is correctly made to depend upon other facts, should they so find them, and the burden is then properly placed, there. is no error.

5. Manslaughter—Malice—Instructions.

　　When there was evidence tending to show that the prisoner recklessly. fired his pistol from a moving train for the purpose of frightening the deceased, who was near the right-of-way of the railroad, and that deceased was killed thereby, there is no error in a charge, that if defendant fired the fatal· shot recklessly, but without intent to kill, it would be manslaughter, which is the unlawful killing of one person by another without malice.

6. Punishment Excessive—Cruel or Unusual—Constitutional Law.

　　In this case, punishment for .nine years in the penitentiary was not excessive, or cruel or unusual, within the meaning of the Constitution.

ACTION tried.before *Ward, J.,* and a jury, August Term, 1908, of BUNCOMBE.

The defendant was indicted for the murder of Alma Green. The evidence tended to show that he was riding in the front compartment of a car on a train which runs from Asheville to Hendersonville. When the train was about 800 yards beyond a station called Buena Vista, the defendant said to Early Marshall, "Watch me make that girl bounce," and then fired his pistol through a hole in the door (or window) of the car and in the direction of the deceased, who was standing with her brother on an embankment of a cut, about 8 or 9 feet high, through which the train was passing at the time. After the shooting, the defendant turned around and said, "I am a mean man," and pulled his sleeve up and showed a scar, and then remarked, "I was shot there once and I fixed the man that did it." Just after the shot was fired the girl fell into her brother's arms.

S. C. Eaton, one of the State's witnesses, who was deputized to arrest the defendant, testified:

"Q. Did you have any conversation with Joseph Lance after that? A. Yes, after he was put in my charge, inside of the baggage car, he came to me and said, 'I see you are an Odd Fellow,' and he said 'So am I,' and he said 'How is the girl?' and I said, 'The doctor says that she can't live but a little time,' and he seemed to be quite affected, and he said, 'Let me out,' and I said 'I can't do it;' and he said, 'As an Odd Fellow can't you turn me out this door?' and I said, 'No, I can't, because I don't think the pledge goes that far.'

Q. What was done after that? A. After he was talking to me, he started toward the door and I stepped between him and the door, and told him he could not get out."

There was testimony tending to show that after the girl was shot the defendant dropped a box containing No. 38 cartridges. His pistol was examined and one chamber was found empty. The calibre of the pistol was No. 38, and the ball that killed the girl was also No. 38. The defendant denied that he had shot the girl, but inquired if she was dead. There was testimony tending to show that two or three shots were fired, one from the steps of the car, at the time the girl was killed. Other testimony was introduced, but it is not necessary to set it out, as so much has been stated as will present the questions raised by the exceptions. The defendant was convicted of manslaughter. His motion for a new trial having been overruled and judgment entered upon the verdict, he appealed.

*Assistant Attorney-General Hayden Clement, Frank Carter, H. C. Chester* and *Mark W. Brown* for the State.

*H. B. Carter, Craig, Martin & Winston, V. S. Lusk* and *Jones & Williams* for defendant.

WALKER, J., after stating the case: The defendant assigned as error that, at the beginning of the trial, he was under bond in the sum of $7,000, the State not insisting on a conviction for murder in the first degree, and that, during the trial, the

Court ordered him into custody and refused to bail him, when he was not indicted for a capital felony. It appears from the facts found by the Court with regard to this exception, that the defendant was ordered into custody and no request was made at the time for bail. The Court afterwards offered to allow bail, but counsel stated that it was not necessary while the Court was actually trying the case. The defendant was ordered into custody during the absence of the jury from the court room, and no reference to the matter was made in the presence of the jury, though they saw the defendant in the custody of an officer. It does not appear that the Court did not act within its legitimate power when it ordered the defendant into custody. As the Court afterwards offered to take bail, the inference clearly is that it thought the bond which had been given was insufficient. We cannot presume that an error was committed. The presumption is the other way. *Graves v. Railroad Co.,* 136 N. C., 7. Besides, we do not see that the action of the Court prejudiced the defendant. "In the conduct of jury trials, much must necessarily be left to the judgment and good sense of the Judge who presides over them." *State v. Laxton,* 78 N. C., 570.

The testimony introduced by the State, that the defendant was under the influence of liquor at the time he fired his pistol, was competent to show his condition in connection with the other testimony tending to prove his reckless indifference to the rights and safety of others. What he said and did were relevant to the inquiry as to the character of his act in shooting at the girl. *State v. Kale,* 124 N. C., 816. This case is not like *State v. Castle,* 133 N. C., 776, for the evidence was not offered to impeach the character of the defendant.

The defendant assigns as error that the Court charged the jury as follows: "It is admitted that the girl, Alma Green, is dead, and that she came to her death by a pistol ball fired at her." It is for the Judge to say what is admitted during the trial, and we cannot review his finding. If no such admis-

sion was made, the defendant should have objected at the time, so that the Judge could have corrected the error, or misunderstanding, if there was any. *State v. Davis,* 134 N. C., 633; *State v. Tyson,* 133 N. C., 692; *State v. Brown,* 100 N. C., 519. We do not see, upon an examination of the evidence, that the fact alleged to have been admitted was contested. The proof as to it was all one way. However, we do not base our ruling upon that ground. There was no suggestion in what the Judge said that the defendant shot the deceased.

The defendant excepted to the following instruction of the Court: "The burden is upon the defendant of showing all the circumstances of mitigation, excuse or justification, to the satisfaction of the jury." This was not all the Judge said. His instruction was as follows: "It is a principle of the criminal law, that where the killing with a deadly weapon is admitted or proven, that is established as a fact in the case, the law implies or presumes malice, and if nothing else appears, it is murder in the second degree, and when that presumption is raised by the admission or proof of the fact of the killing, the burden is upon the defendant of showing all the circumstances of mitigation, excuse or justification to the satisfaction of the jury; that is to say, when one person kills another with a deadly weapon wilfully, the law, by the use of that deadly weapon in the killing, raises the presumption or implication of malice, and if nothing else appears in the case, and that fact is proven beyond a reasonable doubt, the party indicted is guilty of murder in the second degree under the laws of this State."

The Court, as will appear by reference to the charge, did not place the burden upon the defendant to show affirmatively, or by independent proof, facts or circumstances of mitigation or excuse, but directed the attention of the jury to all of the evidence. *State v. Castle,* 133 N. C., 769, is not like this case, though the admitted principle as therein stated is suffi-

cient to sustain the charge in this case. The charge must be considered as a whole and not in detached portions. *State v. Exum,* 138 N. C., 599.

The only other exception to the charge requiring consideration is the one to the following instruction: "If you should find from the evidence and beyond a reasonable doubt that the defendant fired the shot that killed the girl, and that it was done recklessly, but without intention to kill, it would be manslaughter, and your verdict in that case would be manslaughter, which is the unlawful killing of one person by another, but without malice." This instruction is fully supported by the authorities. In 1 McClain Crim. Law, sec. 325, the law is thus stated: "Where an act in itself unlawful is intentionally done for the purpose of killing or inflicting serious bodily injury and death ensues, it is murder at common law although the intention is not directed towards any particular person. So it is when death results from discharging a firearm in the direction of another with reckless indifference to consequences, if the act is likely to result in the death of the person toward whom the shot is fired, or where it is caused by discharging a firearm into a crowd of persons with intent to kill some one, or with criminal recklessness. In general, to cause death by wilfully doing an act calculated to endanger life or cause great bodily harm will be murder, although there is no specific intent to kill. But if the intention, although unlawful, was not to cause death or great bodily injury, and death accidentally or unexpectedly resulted, the offence is not murder but manslaughter. The negligence or unlawfulness may be sufficient to make the act criminal, although not sufficient to show malice aforethought." See also *State v. Vines,* 93 N. C., 493; *State v. Capps,* 134 N. C., 630, 631.

The charge of the Court presented the case fully and fairly to the jury in every phase of the evidence, and was as favorable to the defendant as the law permitted.

The punishment—nine years' imprisonment in the penitentiary—for so grave an offence, can hardly be considered as excessive and is certainly not cruel or unusual within the meaning of the Constitution. The exception to the judgment for this reason is, therefore, clearly without any merit.

We find no error in the rulings and judgment of the Court below.