W. C. KORNEGAY v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 22 March, 1911.)

1. Railroads—Negligence—Burning—Evidence—Nonsuit.

In an action to recover damages for the destruction of plaintiff's residence, alleged to have been caused by fire communicated to the house, which was situated near the defendant's right of way, by sparks from defendant's passing engine, there was evidence tending to show that no fire was within the house which could have caused the damage; that plaintiff and his family, between midnight and 2 o'clock A. M., stood on his front porch and watched the defendant's train pass, and the engine was throwing sparks from its smokestack in great quantities, with the wind blowing from that direction toward the house, which was enveloped by sparks; that soon after plaintiff and his family retired he was awakened by noises which proved to come from his burning house, which was completely destroyed, and that day broke about two hours after the fire was over. There was evidence in defendant's behalf tending to show that its engine was equipped with the best approved type of spark arrester in general use, and that no sparks were emitted from its engine: *Held*, approving the rule that the evidence must be construed in the most favorable light to the plaintiff, when a motion to nonsuit is made, that the plaintiff had made out a *prima facie* case, and was entitled to go to the jury upon the issue as to defendant's negligence.

## 2. Instructions, How Construed—Correct as a Whole.

The charge of the court to the jury must be considered as a whole and not disconnectedly, and each instruction must be construed with reference to what preceded and followed it; and when the charge as thus viewed is correct, detached portions thereof, even in themselves subject to criticism, do not constitute reversible error.

## 3. Same—Railroads—Negligence—Burning—Evidence.

In an action against a railroad company to recover damages for burning the plaintiff's house, alleged to have been negligently caused by sparks from the defendant's engine, the judge correctly instructed the jury, in substance, that if the house caught fire from sparks which were emitted from the engine, it made out a *prima facie* case of negligence, but they would not find against the defendant upon the issue if they concluded, after consideration of all the proof, that the defendant's engine had a spark arrester, not the best, but of approved make and in general use, and that the train was carefully handled, so that there was no negligence on the defendant's part.

## 4. Evidence—Irrelevant Questions—Harmless Error.

During the examination of the plaintiff in this case an inquiry by the court, "You had a pretty big piazza, didn't you?" was held irrelevant and harmless, the action being to recover damages of the defendant railroad company for negligently setting fire to and destroying plaintiff's house by sparks from its locomotive.

## 5. Same—Railroads—Burning.

On the question of defendant's negligence in permitting sparks from its engine to set fire to and destroy plaintiff's house, the defendant's counsel asked a witness where the engineer was when he last heard from him, and the question was excluded: *Held,* the inquiry was irrelevant, no other evidence appearing to make it competent.

APPEAL from *Cooke, J.,* at October Term, 1910, of WAYNE.

Action to recover damages for setting fire to plaintiff's house and destroying the same and a part of its contents. So much of the plaintiff's own testimony as is necessary to show the origin of the fire was as follows:

"On 23 October, 1907, John H. Sparks' show train was pulling out of Mount Olive to go to Clinton. I was out on my piazza with my family, viewing the train as it passed our

house.   Sparks in great quantities were being emitted from
the smokestack of the engine pulling that train of cars.   My
house was situated on the east side of the railroad, and the
course the wind was blowing was from the northwest, coming
directly across the railroad towards my house and conveying
the sparks in great quantities over the house and at random,
it seemed to me, everywhere else.   That was somewhere be-
tween 12 and 2 o'clock at night.   We went to bed as soon as
the train passed.   I went to sleep; my wife roused me and said
there was a noise somewhere.   On being aroused, I heard a
noise of something breaking or something falling; I then went
out in the hall to get my gun, but did not get it; on getting in
the hall and looking through the transom over the front door
it looked very red, but I still heard the noise which seemed to
be overhead; I then opened the front door facing the railroad,
and I saw the light from fire.   I rushed out on the railroad
right of way.   The fire was burning on the roof of my house,
and it was falling in.   I rushed in and told my wife the fire
was burning the roof of the house, to get up at once, which she
did.   There was no evidence of fire anywhere on the inside of
the house, either downstairs or upstairs.   There were two
double chimneys to the house, containing six fireplaces, but
there had been no fire in the house for two days.   The kitchen
was at the rear of the house, a single room 10 x 12 feet and 9
foot pitch, and we had not cooked in the stove nor had any fire
in the kitchen since 6 that morning.   We had spent the en-
tire day in the show grounds and in the shows.   The house
was consumed and (nearly) all the furniture.   .  .  .   There
was no fire in the kitchen when I first discovered it.   The fire
was confined to the front part of the roof of the main house.
.  .  .   I had not been asleep very long when fire broke out.
Day broke about two hours after the fire was over.   It appeared
to be between 1 and 3 o'clock when fire was first discovered."

There was other evidence tending to show that the fire was
caused by sparks emitted from the smokestack of the defend-
ant's locomotive engine.   There also was evidence, on the part
of the defendant, that the engine had a spark arrester in good
condition and of the best approved type in common or general

use, and that no sparks were emitted from the engine as it passed near the plaintiff's house. The jury returned a verdict for the plaintiff, and from the judgment thereon the defendant appealed. .

*J. D. Langston and W. T. Dortch for plaintiff.*
*W. C. Monroe for defendant.*

WALKER, J., after stating the case: The defendant's motion for a nonsuit was properly overruled. There was sufficient evidence tending to show that the fire was caused by sparks emitted from .the defendant's engine. The plaintiff's own testimony, and there was more of the same kind, warranted the jury in finding, as a fact, that the house was set on fire in that way. If we construe the evidence in the most favorable light for the plaintiff, giving him the benefit of all legitimate and reasonable inferences to be drawn therefrom, as we are required to do (*Cotton v. R. R.,* 149 N. C., 227; *Freeman v. Brown,* 151 N. C., 111), the evidence is quite as strong as that which was held sufficient in *Deppe v. R. R.,* 152 N. C., 80, a case much like this one in its facts and circumstances.

When it is shown that the fire originated from sparks which came from the defendant's engine, the plaintiff made out a *prima facie* case, entitling him to have the issue as to negligence submitted to the jury, and they were justified in finding negligence unless they were satisfied, upon all the evidence in the case, that, in fact, there was no negligence, but that the defendant's engine was equipped with a proper spark arrester and had been operated in a careful or prudent manner. *Williams v. R. R.,* 140 N. C., 623; *Cox v. R. R.,* 149 N. C., 117.

The charge of the court, when properly considered as a whole, was in accordance with the principles settled in the cases just cited. We are not permitted to select detached portions of the charge, even if in themselves subject to criticism, and assign errors as to them, when, if considered with the other portions of the charge, they are readily explained and the charge in its entirety appears to be correct. Each portion of the charge must be construed with reference to what precedes

and follows it. This rule is so plainly fair and just, both to the judge and the parties, as to have commended itself to the courts, and it is the only reasonable one to adopt. *S. v. Exum,* 138 N. C., 599; *S. v. Lewis* (at this term). In *S. v. Exum, supra, Justice Hoke,* approving the statement of the rule to be found in Thompson on Trials, sec. 2407, says: "It (the charge) is to be considered as a whole in the same connected way in which it was given, and upon the presumption that the jury did not overlook any portion of it. If, when so construed, it presents the law fairly and correctly to the jury, it will afford no ground for reversing the judgment, though some of the expressions, when standing alone, might be regarded as erroneous." Apply this rule to the charge of the court, and we think it will be gathered therefrom that his Honor substantially told the jury that if the house caught fire from sparks which were emitted from the defendant's engine, it made out a *prima facie* case of negligence; but they would not find against the defendant upon the issue if they concluded, after consideration of all the proof, that the defendant's engine had a spark arrester—not the best, but of approved make and in general use—and that the train was carefully handled, so that there was no negligence on the defendant's part. The court did not say that the mere emission of sparks, even if they started the conflagration, would establish the liability of the defendant for the consequent damage, but the careless emission of sparks, whether they proceeded from a defective spark arrester or from the unskillful or negligent operation of the engine. *Deppe v. R. R.,* 152 N. C., at page 83.

The plaintiff testified that he and his wife were sitting on the piazza of his house when the train passed. He was describing the piazza, when the court inquired: "You had a pretty big piazza, didn't you?" No objection was made to the remark at the time, but defendant afterwards assigned it as error. The plaintiff contends that if the remark was injurious to the defendant, the objection came too late, and cites *Alley v. Howell,* 141 N. C., 113; *S. v. Tyson,* 133 N. C., 692; but we need not consider this contention, as we are of the opinion that the

inquiry, if not proper, was harmless. It was not relevant to the controversy in any way. What could the size or dimensions of the porch have to do with the negligence of the defendant or the question being tried? It was not prejudicial in any view that we can take of the case. The defendant's counsel asked a witness where the engineer was when he last heard from him, and the question was excluded. It does not appear that any effort had been made to procure the attendance of the engineer as a witness, by issuing a subpœna for him or by taking his deposition. The inquiry as to his whereabouts was, therefore, irrelevant. For all that appears, the defendant could easily have had the benefit of the engineer's testimony if wanted. It was not proposed to show that he was dead, or that the defendant could not reach him with process or take his deposition. If that was the object, it should have been disclosed to the court, as otherwise it could not be material where he was.

We find no error in the case.

No error.