DAVID McNEILL, ADMINISTRATOR, v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 2 December, 1914.)

1. **Railroads—Headlights—Negligence—Proximate Cause—Burden of Proof.**

In this action to recover damages of a railroad company for the negligent killing of the plaintiff's intestate while the defendant was running its train on a dark night without a headlight, there was evidence tending to show that the deceased, who had been drinking, was found dead at a place on the defendant's right of way customarily used by pedestrians, lying on the ground with his head on a cross-tie, with a large hole in his left side which afterwards caused his death, after the train of defendant had passed the place, and also after another of defendant's trains with the required headlight, had passed, going in the opposite direction. There was allegation in the complaint that the deceased was killed while walking near the track, or attempting to cross the track of the defendant company. *Held*, upon the issue as to the defendant's negligence, the burden was on the plaintiff, not only to show that the defendant was negligent in the running of the train without the headlight or giving warnings of its approach, but that the negligence proximately caused the injury complained of, it being for the jury to determine, under the circumstances of this case, whether the deceased was killed by the train running without the headlight; and if so, whether the intestate, being drunk at the time, ran into the train after the engine had passed, or got upon the track immediately in front of the moving train, so that, notwithstanding the absence of the headlight, he would have nevertheless met his death.

2. **Trials—Instructions—Construed—Railroads—Headlights—Negligence—Expression of Opinion—Appeal and Error.**

Where there is evidence tending to show that the plaintiff's intestate was killed at night by the defendant railroad company's train running without a headlight, under circumstances requiring the plaintiff to prove that the defendant's negligent act was the proximate cause of the death of the deceased, a charge that it made no difference, upon the issue of defendant's negligence, that the train was running without a headlight, though erroneous, when standing alone, is not held for reversible error in this case as an expression of opinion by the court forbidden by statute, it appearing from construing the charge as a whole that the jury could not have been misled thereby, and the charge being otherwise correct.

McNeill *v.* R. R.

3. Trials — Instructions Construed — Railroads — Usefulness—Character of Plaintiff—Prejudice—Expression of Opinion.

Where damages are sought of a railroad company for the negligent killing of plaintiff's intestate, a charge, construed as a whole, is not held for error as an expression of opinion forbidden by our statute which in effect instructs the jury that they should not decide the case from any sympathy or consideration for the deceased, or any admiration for his good qualities or detestation for his bad qualities, if he should have any; or consider that the defendant is a railroad, explaining the usefulness of railroads; and saying that to award damages against them except upon the law and evidence would be robbery, tending to cripple them; and that not to award damages to the plaintiff upon the law and testimony would be equal robbery; that as honest men and good jurors they, uninfluenced by moving appeals and powerful oratory, should coolly, quietly, without sympathy, passion, or prejudice, try to pass upon the evidence, and reconcile it, and answer the issues submitted.

4. Appeal and Error—Answers to Issues—Immaterial Exceptions.

It becomes unnecessary on plaintiff's appeal to consider his exception to the refusal of the trial court to submit an issue upon the last clear chance, in a personal injury case against a railroad company, where the jury have answered the issue as to defendant's negligence in its favor upon the evidence and under correct instructions of the law.

5. Pleadings—Trials—Instructions—Appeal and Error.

In an action to recover damages of a railroad company for the negligent killing of plaintiff's intestate by its train, a requested instruction as to the defendant's duty to keep a lookout was properly refused, there being no allegation in the complaint to that effect.

CLARK, C. J., dissenting.

APPEAL by plaintiff from *Rountree, J.,* at March Term, 1914, of CUMBERLAND.

This is an action instituted by the plaintiff, administrator of D. A. McAllister, for the wrongful death of his intestate, alleged to have been caused by the negligence of the defendant. The allegations of negligence in the complaint are as follows:

"That on the night of 29 December, 1912, the plaintiff's intestate, while walking near the track, or attempting to cross the track of the defendant's company, and dressed only in his underclothes, was struck by a locomotive of the defendant company, near the signal station at Beard, N. C., which locomotive was drawing a freight train, and which, at the time of the accident above referred to, was being run and operated without the use of headlights of any description, and at the time herein referred to was giving no signal by bell, whistling, or otherwise, in consequence of which acts on the part of the defendant company the plaintiff's intestate was struck, wounded and bruised, from the effects of which he died on ____ January, 1913.

"That the injuries above referred to, and the death of plaintiff's intestate resulting therefrom, were caused by the negligence of the defendant company and its agents and employees."

It appears from the evidence that at about 2 o'clock a. m. on 29 December, 1912, D. A. McAllister was found on the right-hand side of the· track of the defendant, between Wade and Beard, N. C., stations about 5 miles apart, and at a point about 150 yards from Beard station. The deceased was lying on the ground, with his head on a cross-tie, and had a large hole in his left side, caused by an injury from which he afterwards died. The deceased was drinking and dressed in his night-clothes.

It was in evidence that the right of way of the defendant company between these two stations had been used as· a path for pedestrians for twenty-five or thirty years.

It also appears from the evidence that an extra freight train passed Wade station a short time before the deceased was found, which was running without a headlight, and that the only lights thereon were two small lights, one on each side,· used as classification signals to indicate that the train was an extra. The witnesses McNeill and Gibson stated that this train, going southwardly, passed them as they were walking in the same direction toward Beard station, searching for deceased; that before they reached the deceased, and while some distance from Beard, they saw a bright headlight of a train coming towards them in a northwardly direction; that they could see all the way to Beard station, and that there was no man or any other object upon the track. It is admitted that the two trains passed at a point south of Beard station, and that the track between Wade and Beard is straight all the way.

It was contended by the plaintiff that the deceased was killed by the train which had no headlight. It was contended by the defendant that if the deceased was killed by any train, it was the train going north, which had a headlight, or that if killed by the train running without a headlight, the deceased was not struck by. the engine, but by some other part of the train.

The defendant offered evidence tending to prove that the engine of the freight train was equipped with an electric headlight when it left Rocky Mount; that the light went out at Dunn because the wire that clutches the carbon burned in two, and that the engineer tried to repair it and could not do so.

His Honor charged the jury, among other things, as follows: "It is my business to assist you in arriving at a correct answer to the questions which will be given you in the form of issues by calling your attention, coolly and dispassionately, to what the contentions of the parties are, and what the evidence is sustaining those contentions, and what the law is which you must apply to the facts which have been testified to, in order to enable you to answer those issues.

"You are not to decide this case from any sympathy or consideration for the deceased man, or any admiration for his good qualities or detestation for his bad qualities, if he should have any. You are not to decide the case for or against the defendant because it is a railroad. Railroads are extremely useful things, and if property is taken, by way of a jury's verdict, from a railroad when the evidence and law does not justify it, it is robbery—nothing less than robbery, and if that sort of thing prevails to any very large extent the railroads are crippled. You can easily see that every industry, the people from whom they buy, the lumber men and the steel men, are crippled, and those in turn from whom they buy are crippled, and we have a serious catastrophe. But not to award a verdict in accordance with the law and testimony in behalf of the plaintiff would be equal robbery. So as honest men and good jurors it is your business, without regard to any moving appeals or any power of oratory, coolly and quietly, without sympathy and without prejudice and without passion, but to dispassionately try to pass on the evidence and reconcile it and answer the questions which will be submitted to you." The plaintiff excepted.

"Now, in order to enable you to answer the first issue 'Yes,' you must find first that he was struck by a train of the defendant; that that train had no electric headlight, as required by statute, and that not having the headlight was the cause, and the proximate cause, of the injury. It does not make one particle of difference whether there was any headlight or not. That might have been negligence, and I tell you, as argued by Mr. Shaw and admitted by Mr. Rose, it was negligence for them to run a train without an electric headlight, because the statutes so require. But that would be immaterial unless the train that did not have an electric headlight hit him, and would not have hit him if it had had an electric headlight. Do you understand that?

"The proximate cause is the dominant, efficient cause—that cause without the operation of which the accident would not have happened." The plaintiff excepted.

"If you shall find, by the greater weight of the evidence, the burden of proof being upon the plaintiff to so satisfy you, that the deceased was struck by the train which was running without a headlight, and that the failure to have a headlight was the cause, and the proximate cause as I have defined it to you, of the deceased being struck and killed—that is, that the deceased would not have been struck if the train had had an electric headlight—then you will answer the first issue 'Yes.'

"But if you should not be satisfied by the greater weight of the evidence that the deceased would not have been struck if the train had had an electric headlight burning—that is to say, if you are not satisfied that Mr. McAllister would not have been struck if the light had been burn-

ing—then you will answer the first issue 'No.'" The plaintiff excepted.

"And, again, if you should find from the evidence, and by its greater weight, that the deceased was not struck by the engine, but that the engine had passed the deceased and that he was struck by some other portion of the train, or by falling against it, or otherwise, then you should answer the first issue 'No.'" The plaintiff excepted.

The jury answered the first issue as to negligence in the negative, and the plaintiff appealed from the judgment rendered in favor of the defendant.

*Shaw & McLean for plaintiff.*
*Rose & Rose for defendant.*

Allen, J. The exceptions chiefly relied on by the plaintiff's counsel in his carefully prepared brief are to the opening paragraph of his Honor's charge, upon the ground that it is an argument in behalf of the defendant, and to the charge that "In order to enable you to answer the first issue 'Yes,' you must find first that he was struck by a train of the defendant; that that train had no electric headlight, as required by statute, and that not having the headlight was the cause, and the proximate cause, of the injury. It does not make one particle of difference whether there was any headlight or not. That might have been negligence, and I tell you, as argued by Mr. Shaw and admitted by Mr. Rose, it was negligence for them to run a train without an electric headlight, because the statutes so require. But that would be immaterial unless the train that did not have an electric headlight hit him, and would not have hit him if it had had an electric headlight. Do you understand that?"

The plaintiff does not except to the whole of the first paragraph of the charge. He omits from the exception the concluding sentence, which is an appeal to the jury to consider the evidence coolly and dispassionately and to answer the issues according to the law and the evidence.

The part excepted to, standing alone, might be objectionable; but when considered as a whole, as it is our duty to do, it contains no expression of opinion upon the facts, nor is it an argument in behalf of either party, and, on the contrary, it is an earnest invocation to the jury to free themselves from bias or sympathy and to decide the question submitted to them upon the evidence.

As was said by *Associate Justice Walker,* speaking for the Court in *Aman v. Lumber Co.,* 160 N. C., 374: "The criticism of the charge by defendant's counsel might be just and the exception to it well taken if it could be restricted to the detached portion thereof which is the subject of attack, as it is not quite as explicit, perhaps, as it should have been; but when these isolated sentences or extracts are construed with the

other parts of the charge, and reviewing the latter in its entirety and thus reading it as a whole, as we are required to do (*S. v. Exum,* 138 N. C., 599; *S. v. Lance,* 149 N. C., 551), the meaning of the judge could not well have been misunderstood by an intelligent jury. We have recently said that 'The charge is to be considered as a whole in the same connected way in which it was given, and upon the presumption that the jury did not overlook any portion of it. If, when so construed, it presents the law fairly and correctly to the jury, it will afford no ground for reversing the judgment, though some of the expressions, when standing alone, might be regarded as erroneous.' *Kornegay v. R. R.,* 154 N. C., 389; Thompson on Trials, sec. 2407."

We are also of opinion that it was the duty of his Honor to charge the jury as he did, that the burden was on the plaintiff to prove that the failure to have a headlight was the proximate cause of the death of the plaintiff's intestate, and that they must so find before they could answer the first issue "Yes."

The authorities fully sustain the position of the plaintiff that it is negligence to run a train without a headlight at night along a track frequented by the public; but a plaintiff cannot recover upon proof of negligence alone. He must go further and prove that the negligence complained of was the cause of his injury. *Crenshaw v. R. R.,* 144 N. C., 314; *Pritchett v. R. R.,* 157 N. C., 101; *Henderson v. Traction Co.,* 132 N. C., 784.

In the first of these cases the Court said: "The burden is always on the plaintiff to show by a preponderance of the evidence that the defendant committed a negligent act, and that it was the proximate cause of the injury. The two facts must coexist and be established by the clear weight of the evidence before a case of actionable negligence is made out. *Brewster v. Elizabeth City,* 137 N. C., 392"; in the second: "In all courts where the common law is administered it is held that one cannot recover damages upon proof of negligence alone, and that he must proceed further and show that the negligence of which he complains was the real proximate cause of the injury"; and in the last: "It is generally held, and this we regard as the true doctrine, that the element of proximate cause must be established, and it will not necessarily be presumed from the fact that a city ordinance or statute has been violated. Negligence, no matter in what it may consist, cannot result in a right of action unless it is the proximate cause of the injury complained of by the plaintiff."

In *Powers v. R. R.,* 166 N. C., 599, the principle was applied in an opinion written by the *Chief Justice,* and the following charge was approved: "If you should find from the evidence, by its greater weight, that the train was being operated without a headlight, that is negligence;

and if you should find that as a sequence of that negligence the plaintiff received his injury, you would answer the first issue 'Yes.'"

Again in *Saunders v. R. R., ante,* 375, the Court said, in an unanimous opinion: "The Federal courts and the courts of this State concur in holding that a failure to exercise the diligence and care of a person of ordinary prudence, or a failure to perform a duty due from one to another, is negligence, and that if this breach of duty is the proximate cause of an injury, it is actionable."

The phrase, "continuing negligence," used in *Stanly v. R. R.,* 120 N. C., 514, and repeated in the *Powers case* and in others, is strictly accurate when understood to mean that the negligence began anterior to and continued up to the injury; but such negligence does not absolve the plaintiff from the duty of showing that this negligence was the proximate cause of his injury, which is to be inquired of under the first issue, nor from the duty of exercising ordinary care for his own safety, which arises in the consideration of the issue of contributory negligence, the burden of this issue being on the defendant.

It is not the absence of the headlight, nor the impact of the train, which determines liability, but the impact of the train brought about by or as the proximate result of the absence of a headlight.

To illustrate: Suppose one is at work on an overhead bridge, and without fault on his part he falls on the track 5 feet in front of a rapidly moving train, which is running at night without a headlight, and is killed. Here we have negligence in the failure to have a headlight; but there can be no recovery, because the same result would have followed if there had been a headlight, and its absence has had nothing to do with the injury.

The present case is an apt illustration of the importance of adhering to this principle.

The deceased had been drinking heavily, and was going from place to place in the night-time in his night-clothes.

The evidence as to the cause of his death is circumstantial, and is consistent with his coming on the track suddenly in front of the train, in which event the presence of the headlight would not have averted death; and that this theory is permissible is shown by reference to the complaint, which alleges that the deceased was killed "while walking near the track, or attempting to cross the track of the defendant company."

Of course, if we are in search for technical error, we can find it. We can cut up the charge and take the single sentence, "It does not make one particle of difference whether there was any headlight or not," from the middle of a paragraph and declare it to be erroneous; but to do so we must violate the principle declared in fifty cases, that a charge must

be read as a whole, and not by detached portions, and we will establish a precedent that will render it impossible for any charge to stand the test of an appeal.

As was said in *Revis v. Raleigh,* 150 N. C., 355: "It is the well-settled rule of all appellate courts to read and construe the entire charge of the court and deal with it as a whole. It is not permissible to make disconnected excerpts and seek to find reversible error. To do so would frequently result in new trials where it was manifest that no prejudicial error was committed or the jury misled."

When read as a whole, the objectionable sentence means that it makes no difference whether there was a headlight or not unless its absence was the cause of the death of the intestate.

We have examined the rulings upon the evidence and find no error in them.

The refusal to submit a third issue, as to the last clear chance, and the exceptions to charges upon the issues of contributory negligence and damages, need not be considered, as the jury has answered the first issue against the plaintiff.

The instruction prayed for by the plaintiff, as to the duty of defendant to keep a lookout, could not have been given, because the failure to perform this duty is not alleged in the complaint; and for the same reason the last paragraph of the charge excepted to is sustained.

The theory upon which recoveries are sustained when a person upon the track is killed or injured by a train running in the night without a headlight, although not apparently helpless, is that the absence of the headlight is negligence, and as its presence would probably give notice of the approach of the train by throwing light on the track and upon the person, the failure to have the light is some evidence of proximate cause.

If so, the principle does not apply if the injured person is not on the track or near it, and runs into the train.

No error.

CLARK, C. J., dissenting: There was evidence to show that the plaintiff's intestate was stricken by an engine running without a headlight. If so, *prima facie* the proximate cause of the death of the intestate was the impact of the engine carrying no headlight. On the first issue, as to whether the defendant was negligent or not, the response should have been in the affirmative, because the act of running an engine without a headlight is an indictable offense, and necessarily negligence *per se*. Indeed, the statute, Laws 1909, ch. 446, makes it indictable not to have an electric headlight of at least 1,500 candle-power.

On the second issue, whether the plaintiff's intestate contributed to his own death by his negligence, the statute has also prescribed that the

defendant must allege and prove it. This Court held otherwise in *Owens v. R. R.,* 88 N. C., 502 (*Judge Ruffin* dissenting), and the Legislature soon thereafter passed a statute in conformity with the dissenting opinion, which is now Revisal, 483. There is nothing in the plaintiff's testimony on which the court could hold, as a matter of law, that his intestate was guilty of contributory negligence.

Indeed, under well established principles, if the railroad was negligent in not using the electric headlight as the statute requires, and the intestate was killed by the engine in the absence of the headlight, being deprived of the warning which the light would have given him, and the engineer running in the dark being unable to see him, as he testified, this was a continuing negligence up to the moment of the impact, and as a matter of law was the *causa causans* of the death. This was discussed in *Greenlea v. R. R.,* 122 N. C., 977, in which the Court held: "The failure of a railroad company to equip its freight cars with modern self-coupling devices is negligence *per se,* continuing up to the time of an injury received by an employee in coupling the cars by hand, for which the company is liable, whether such employee contributed to such injury by his own negligence or not."

*Greenlee v. R. R.,* 122 N. C., 977, has been repeatedly cited and approved since, see citations in the Anno. Ed., especially *Troxler v. R. R.,* 124 N. C., 191; *Coley v. R. R.,* 129 N. C., 415; *Elmore v. R. R.,* 132 N. C., 876, and numerous other cases. Yet in the *Greenlee case* there was no statute at that time requiring the cars to be so equipped. But the Court held that it was such a patent defect that it was a continuing negligence on the part of the defendant which lasted up to the moment of the injury, and deprived the defendant of the defense of contributory negligence on the part of the plaintiff. That case has been followed uniformly with us and has since been supplemented by both State and Federal statutes.

In the present case there is a statute requiring electric headlights, and if the plaintiff's intestate was stricken and killed by an engine running without any headlight, it was negligence *per se* under those authorities. The defendant was running in violation of law and was committing an indictable offense. If a man while committing an indictable offense kills another, it is at least manslaughter. For a stronger reason he is liable for negligence.

The judge charged as follows: "Now, in order to enable you to answer the first issue 'Yes' you must find first that he was struck by a train of the defendant; that the train had no electric headlight, as required by statute, and that not having the headlight was the cause, and the proximate cause, of the injury. *It does not make one particle of difference whether there was any headlight or not.* That might have been negli-

gence, and I tell you, as argued by Mr. Shaw and admitted by Mr. Rose, it was negligence for them to run a train without an electric headlight, because the statutes so require. But that would be immaterial unless the train that did not have an electric headlight hit him, and would not have hit him if it had had an electric headlight. Do you understand that?" If this charge is correct, it overrules every case this Court has written on the subject and repeals the statute itself. The jury were told, "It does not make a particle of difference whether there was any headlight or not." What, then, was the purpose of the Legislature, in requiring a headlight, but to protect the lives of the people from being needlessly taken? What administrator can ever prove, as the court required this plaintiff to prove, that his intestate "would not have been hit if the engine had had a headlight"? The engineer testified he could not have seen a man 20 steps ahead of him, because of absence of the headlight. There is no evidence that the deceased negligently or willfully stepped on the track so close to the engine it could not be stopped, and the burden of such defense was on the defendant.

Even before the statute of 1909, ch. 446, it was held that it was negligence *per se* to carry no headlight. *Willis v. R. R.,* 122 N. C., 909. There is a long line of decisions which hold that it is negligence to operate a train without a headlight. *Stanly v. R. R.,* 120 N. C., 514; *Heavener v. R. R.,* 141 N. C., 245; *Brown, J.,* in *Allen v. R. R., ib.,* 340; *Walker, J.,* in *Morrow v. R. R.,* 147 N. C., 627; *Brown, J.,* in *Hammett v. R. R.,* 157 N. C., 322; *Shepherd v. R. R.,* 163 N. C., 518. As there was evidence sufficient to go to the jury that the deceased was killed by the train when it was operating without a headlight, such negligence was the proximate negligence.

The court erred in refusing to charge the jury, "If you find from the evidence that the defendant company operated its engine without a headlight, and that the deceased came to his death as the result of being struck by such engine, this was negligence *per se* or negligence of itself, on the part of the railroad company, and you should answer the first issue 'Yes.'"

In *Stanly's case, supra,* the Court said: "If this light was not furnished, the company was not only negligent, but its negligence was a continuing one. The jury found that the defendant was guilty of negligence for its failure to carry a light on the car in front of the engine. On account of that failure, the plaintiff's intestate was put off his guard, and cut off from the opportunity to see the danger, and the failure was a continuing negligence and omission of duty on the part of the company, the performance of which would have enabled the defendant to have had the last clear opportunity; and this negligence was therefore the proximate cause of the injury."

McNeill *v.* R. R.

The Legislature thought the act amounted to something in protecting human life, or it would not have passed it. If it had, with the same view, made it indictable not to ring a bell, or blow a whistle at a crossing, could the court likewise have charged that failure to do so "makes not a particle of difference" unless the administrator could prove that the dead man would have heard the whistle and would have gotten out of the way?—which course is impossible. Yet it is much more certain that a man on the track on a dark night would see and heed a 1,500-candle-power headlight, especially as not carrying a headlight is unusual and puts him off his guard.

In *Shepherd v. R. R., supra,* the Court quotes and approves *Hoke, J.,* in *Snipes v. R. R.,* 152 N. C., 42, as follows: "It is well established that the employees of a railroad company are required to keep a careful and continuous lookout along the track; and the company is responsible for injuries resulting as the proximate consequence of their negligence in the performance of its duty." And asks, "How could this duty be performed in the night-time in the absence of a headlight?" To same effect are *Guilford v. R. R.,* 154 N. C., 607; *Hoke, J.,* in *Edge v. R. R.,* 153 N. C., 212; *Hoke, J.,* in *Sawyer v. R. R.,* 145 N. C., 24; *Arrowood v. R. R.,* 126 N. C., 629; *Pickett v. R. R.,* 117 N. C., 616.

It should be noted that the defendant's engineer, Sutton, testified: "Those lights (on the side) were not put there to light up the track. As a matter of fact they do not light up the track, and if there had been a man on the track I could not have seen him. I could not have seen a man 20 steps ahead on that night. So far as the track ahead was concerned, it was absolutely black from Dunn to Fayetteville." It was impossible, therefore, for the defendant's employees to have kept a lookout, or to give the warning required by the statute. This engineer frankly admitted that he pulled out of the side-track at Dunn without a headlight; that he side-tracked at Godwin, a station between Dunn and Wade, where he could have stopped to fix his lights, but that the train went right on through to Fayetteville and then southwardly without any headlight whatever till daylight. The telegraph operator said the only lights were two sidelights about as large as ordinary hand lanterns.

After having negligently and wantonly endangered the lives of the public in this manner and in violation of a statute, under all the authorities it was error for the court to charge that the plaintiff must prove that such negligence was the proximate cause of the injury, and that the plaintiff assumed the burden of proving that the deceased would not have been killed had the defendant complied with the law. The plaintiff had no witnesses who could testify as eye-witnesses to the killing, and usually could not of a killing in the dark, but there was evi-

dence sufficient to go to the jury that he was killed by an engine operating without a headlight, in defiance of the statute, and therefore negligently; and if there had been any contributory negligence, or if the defendant could have shown facts to exonerate it from the statutory negligence *per se,* the burden thereof was upon the defendant. Revisal, 483.

Indeed, the evidence was conclusive that the extra freight train which did not carry a headlight killed the plaintiff's intestate. There was no suggestion that his death could have been caused by any other means than a train, and indeed the defendant's surgeon testified that the deceased, who was found dead along the track, was struck by some object more powerful than a human hand could wield. This being so, the only question on this point is as to which train killed him. The uncontradicted testimony of two witnesses is that when the extra freight had passed, and had also passed the other train, they could see the track lighted up all the way to a point south of Beard, and there was no man or object upon the track; and the telegraph operator at Beard testified he could see up the track a distance of a quarter of a mile above Beard, and there was no object thereon, except a white object which he took to be a sign-board. The deceased was found within 150 yards of Beard and within the area seen by the operator.

The evidence is therefore as conclusive as a mathematical demonstration that the deceased was struck by the extra train, which did not carry a headlight, and whose failure to do so was an indictable offense.

The court also refused to charge, though prayed, that "the employees of a railroad company in operating its trains are required to keep a careful and continuous lookout along the tracks, and the company is responsible for any injuries resulting as a proximate consequence of their negligence in their performance of this duty." The plaintiff was entitled to this charge. *Shepherd v. R. R.,* 163 N. C., 522, where many cases are cited on this point.

The court also refused to charge, as prayed: "The plaintiff's intestate had a right to suppose that the railroad company would take care to provide against injuring pedestrians on the tracks by providing proper lights and signals, and felt secure in acting upon that supposition." This prayer is quoted from *Stanly v. R. R., supra,* and often approved since, and it was error not to give it.

Nor is that all in this case upon which the plaintiff is entitled to claim a new trial. He assigns as error that the court "greatly prejudiced his cause by statements in charging the jury which amounted to an expression of opinion, and necessarily influenced the verdict of the jury."

The court told the jury: "Railroads are extremely useful things, and if property is taken by way of a jury's verdict from a railroad when the law does not justify it, it is robbery—nothing less than robbery; and

167—26

if that sort of thing prevails to any large extent, the railroads are crippled. You can easily see that every industry, the people from whom they buy, the lumber men and the steel men, are crippled, and we have a serious catastrophe. But not to award a verdict in accordance with the law and testimony in behalf of the plaintiff would be equal robbery." The plaintiff thinks that this was not an impartial charge, but an expression of opinion. His views cannot be better given than in the language of his counsel, Messrs. Shaw & McLean, as follows: "This, we think, was an argument by the court which appealed to the sympathies and financial interests of the jury. If the court desired to make arguments on both sides, we think it would have been just and proper for the court to have reminded the jury that Mr. McAlister was a very fine and useful man; that unless the verdict was in favor of the plaintiff the hopes of the widowed sisters and those dependent upon the deceased would be blighted; that his estate and his fine business at Wade station would be ruined; that the farmers dependent upon his business for credit would be helpless, and that every party with whom Mr. McAlister had dealt would be seriously injured. His Honor might then have added, in order to rebut it, 'But not to award a verdict in accordance with the law and testimony in behalf of the defendant would be equal robbery.' "

Again, the court charged the jury: "A railroad train is bound to run on its track. It cannot run out in the woods and go around people." The plaintiff's counsel again say: "It would have been just as proper for his Honor to have charged the jury that the defendant is bound to see out of his eyes, and that the eye is so constituted that it cannot see a light which is not burning." They further say the attitude of the court below is also manifested by his statement: "You have not got the right to say, 'Well, he was the finest kind of a man, and I will give him $25,000 or $10,000 or any other sum !' You would not be doing your duty if you did that." The plaintiff's counsel say the court might just as fairly have added, "You haven't got the right to say, 'Well, this man got on sprees occasionally and was a sorry fellow anyway, and therefore I will not give him anything.' You would not be doing your duty if you did that."

They contend that the court, in effect, told the jury that "The railroad is an extremely useful thing, and a verdict against it will cripple the lumber men and the steel men and injure commerce. But when you come to consider the rights of the estate of the deceased, the court positively forbids you to consider anything relating to his good qualities, nor shall you even consider that he has lost the most precious thing of all—his life."

Counsel further quote the language of the court: "No damage can be recovered for sentimental reasons or because there was much suffering, pain, agony, or anything of that sort. In an action for death it is a cold-blooded proposition of how much money did the estate of the deceased man lose by his death." Counsel say, making a legitimate argument in alleging a violation of the statute by the court, as follows: "Thus charged the court as to suffering, and life, and death; but it seemed fair to the same court that the verdict of the jury should be influenced by the commercial welfare of the railroad and its connections. When considering the railroad side, use one rule, and remember the benefits to be derived from a successful railroad company. Consider carefully what a financial loss to it might mean. But when you consider the plaintiff's side, who has merely lost a human life, divest yourself of all sympathies and base your verdict upon the rigid rules of the law. Such was his Honor's charge in effect." Counsel then add: "We submit that the litigants should have been fed out of the same spoon, or, more properly, that the law should have been laid down impartially."

In excepting that this charge was not impartial, and in comparing its expressions in regard to the opposing litigants, counsel were within their rights and doing what has been done in many instances, some of which have been held ground for new trial by this Court.

At common law the judges were not forbidden to express an opinion upon the facts in issue. But the Legislature of this State as far back as 1796, ch. 452, now Revisal, 535, provided: "The judge to explain the law, but express no opinion upon the facts. No judge in giving a charge to the petit jury, in either a civil or a criminal action, shall give an opinion whether a fact is fully or sufficiently proven, such matter being the true office and province of the jury; but he shall state in a plain and correct manner the evidence given in the case and declare and explain the law arising thereon."

This statute has been repeatedly brought to the attention of this Court by parties who have thought that the judge had infringed the rule, and did not confine himself to the law of the case, but intimated his opinion upon the facts. Why the General Assembly of North Carolina saw fit to pass this statute is not before us. It may be that they thought that when on one side there might be an influential litigant, employing able and numerous counsel, and on the other side an humble litigant without means and most often employing counsel on credit, the judge might be overpersuaded and intimate his views to the jury. With that jealous determination to secure impartial trials in all cases the Legislature passed and has retained this statute. They did not thereby charge that the judges would be improperly influenced, but they meant to say, and did say, that in the determination of the issues of fact by a jury the judges had no part, and should "keep out."

The plaintiff thinks that in the paragraphs of the charge above the judge unconsciously, doubtless, intimated to the jury his opinion that the defendant ought to have their verdict, and that he did this in such a way that the average juror could not misunderstand him.

The court also charged the jury that "the defendant had made a very strong argument that the deceased was a trespasser," and the judge did not deny the correctness of this construction. Under the law, the deceased was not a trespasser, but a licensee, for the undisputed evidence is that the defendant had allowed this part of its track to be used as a pathway for twenty-five or thirty years.

There are other exceptions pointing out other errors prejudicial to the plaintiff in this trial, but what has been above set forth should be sufficient.

The judge ought not to have told the jury that the failure of the railroad to observe a statute requiring, for the protection of human life, a headlight at night "makes not a bit of difference." A more deadly instrument of death and destruction cannot be devised than one of these powerful engines rushing across the country on a dark night at 20 to 70 miles an hour without giving warning by a headlight. The judge ought to have told the jury that if they found that the deceased was killed by an engine running at night without a headlight, the plaintiff was entitled to a verdict unless the deceased stepped on the track so near the engine that the engineer, even if he had a legal headlight, could not have seen him in time to avoid killing him, and that the statute put the burden of proving this on the defendant. The judge disregarded both of these statutes, and told the jury that if the deceased was killed by an engine running at night without a headlight, the absence of the headlight "made not a bit of difference" and the railroad was entitled to their verdict unless the plaintiff should further satisfy the jury that even if there had been a headlight the deceased would not have been killed anyway, which no mortal man could prove, and the "law is made of none effect." Besides, even with a headlight the defendant might have been negligent, and the plaintiff is called on to disprove even that.

Of course, the plaintiff must show that his intestate was killed by a locomotive running at night without a headlight, but that fact of itself is evidence of proximate negligence entitling the plaintiff to a verdict unless the defendant shows in defense that the killing was unavoidable and without any fault on the part of the defendant.