Criminal prosecution tried upon an indictment charging the defendant with rape. *Page 456 
The prosecutrix, a woman 52 years of age and a partial invalid, resided in Salem Chapel Township, in Forsyth County, with her father, who is 82 years of age and partially deaf. On Sunday night, 30 November, 1941, the prosecutrix retired between 10:30 and 11:00 o'clock. She slept upstairs and her father slept downstairs. On this night she and her father were alone in the house. About 1:30 in the morning the prosecutrix was awakened, the bed quilts were over her head and someone was lying on her and she was being choked. She managed to cut on the light by her bed and her assailant knocked the light off the table, disconnected it and then hit her on "the head with something very hard." She hollered several times, but her assailant had his hand over her mouth and again choked her. She managed to get her hand on his head and felt the nap of his hair and knew him to be a Negro. He had sexual intercourse with her. He heard her father coming upstairs and jumped through a window, tearing off a screen which had been tacked to a frame. Upon examination of the room after the attack, a hammer was found on the bed. A bottle containing about one-third of a pint of liquor, was found on the stair steps.
On the afternoon of 1 December a medical examination of the prosecutrix disclosed severe bruises, abrasions, with raw places on the face and neck, and evidence of penetration.
Defendant lived near the home of the prosecutrix, had worked for her father and had helped in the home. He had swept the house upstairs and downstairs. The prosecutrix was not able to sweep on account of her paralytic condition. Defendant was working for her father on the morning of 1 December, 1941, chopping wood, when he was arrested. Shortly after his arrest, according to the State's evidence, the defendant confessed the crime to G. K. Fontaine, a deputy sheriff, and thereafter repeated his confession in the presence of a brother of the prosecutrix and Mr. Speas, another deputy sheriff. In the afternoon of the same day of his arrest, the defendant repeated his confession to E. G. Shore, sheriff of Forsyth County. The confession was taken down by a stenographer, transcribed, read to the defendant and signed by him. This confession was admitted in evidence on behalf of the State.
Defendant contends all these confessions were involuntary, that he was threatened and coerced into making them, and further contends that he does not remember making them, and if he did make them it was while he was drunk and he cannot remember what he said. The State offered evidence to the effect that defendant was not threatened in any manner, that before he confessed he was informed of his rights, that he did not have to make any statement but if he did make one it would be used against him. The evidence further discloses that on the other two occasions when the confession was repeated by the defendant, he was *Page 457 
informed of his rights and warned that his statements would be used against him.
The defendant entered a plea of not guilty and introduced evidence as to his weak mentality from childhood and of his habitual drunkenness. Defendant testified he did not commit the act for which he was being tried, but that if he did he was so drunk he did not remember anything about it.
Verdict: "Guilty of rape as charged in the bill of indictment." Judgment: Death by asphyxiation. The defendant appeals, assigning errors.
The defendant presents for consideration twenty assignments of error based on thirty-nine exceptions. Obviously we cannot discuss them seriatim.
The first assignment of error is to the ruling of his Honor that the confession of the defendant was voluntary. A preliminary examination of Sheriff Shore was conducted to determine whether or not the confession made to him by the defendant, which was reduced to writing, read to the defendant and signed by him, was made voluntarily. The court found as a fact that any statement made by defendant to the witness was free and voluntary. The competency of a confession is a preliminary question for the trial court, and the court's ruling will not be disturbed, if supported by any competent evidence. See S. v. Manning, 221 N.C. 70,18 S.E.2d 821, and cases there cited.
No error has been made to appear in the admission of the confession of the defendant in evidence.
The defendant assigns as error his Honor's charge, instructing the jury it could return one of two verdicts, as it found the facts to be, from all the evidence — guilty as charged in the bill of indictment or not guilty. The pertinent part of C. S., sec. 4639, reads as follows: "On the trial of any person for rape, or any felony whatsoever, when the crime charged includes an assault against the person, it is lawful for the jury to acquit of the felony and find a verdict of guilty of assault against the person indicted if the evidence warrants such finding." C. S., sec. 4640, reads as follows: "Upon the trial of any indictment the prisoner may be convicted of the crime charged therein or of a less degree of the same crime, or of an attempt to commit the crime so charged, or of an attempt to commit a less degree of the same crime." The defendant is relying on the above statutes and the case of S. v. Williams, 185 N.C. 685,116 S.E. 736, in which case there was ample evidence to support a conviction *Page 458 
of a lesser offense than that charged in the bill of indictment, and the Court said: "It is a well recognized principle that where one is indicted for a crime, and under the same bill he may be convicted of a lesser degree of the same crime, and there is evidence tending to support the milder verdict, the prisoner is entitled to have this view presented to the jury under a correct charge, and an error in this respect is not cured by a verdict convicting the prisoner of a higher offense, for in such case it cannot be determined that the jury would not have convicted of the lesser crime if the view had been correctly presented by the judge, upon evidence.S. v. White, 138 N.C. 715; S. v. Foster, 130 N.C. 666673; S. v. Jones,79 N.C. 630." However, in the instant case, the defendant admits he was not entitled to an instruction on the count of an assault with intent to commit rape for the reason that all the evidence tended to show the act of carnal knowledge was committed and against the will of the prosecutrix. In the trial below the defendant offered no evidence to support a contention of guilt of a lesser offense than that charged in the bill of indictment, but, on the contrary, denied the commission of the crime and interposed as affirmative defenses, if he did commit the crime, insanity and drunkenness.
In view of the evidence adduced at the trial below, we think the decision of this Court in S. v. Jackson, 199 N.C. 321, 154 S.E. 402, is controlling, in which case the Court said: "At the trial of this action, there was no request by the defendant that the court instruct the jury that under the indictment upon which defendant was on trial, if the jury should fail to find that defendant is guilty of rape, as charged in the indictment, or that he is guilty of an assault with intent to commit rape, as is also charged therein, they could, in accordance with the provisions of C. S., 4639, and C. S., 4640, return a verdict that defendant is guilty of an assault with a deadly weapon, or of an assault upon a female, or of a simple assault. It is apparent from the record that no contention to this effect was made by the defendant or in his behalf at the trial, for the reason that all the evidence, if believed by the jury, showed that the crime of rape was committed as alleged in the indictment. No contention to the contrary was made by the defendant, on his cross-examination of the prosecutrix, or of the witness for the State. He offered no evidence in support of such contention. For his defense, defendant relied solely upon an alibi. S. v. Williams, 185 N.C. 685, 116, S.E., 736, where it was held that the refusal of the trial judge to give the instruction requested by the defendant in that case, does not sustain the contention of the defendant in the instant case, that there was error in the failure of the court to so instruct the jury. Where all the evidence at a trial upon an indictment for rape shows that the crime was committed, as alleged in the indictment, and the defendant makes *Page 459 
no contention to the contrary, but for his defense relies solely upon an alibi, the principle upon which a new trial was ordered in S. v. Williams,supra, does not apply." S. v. Ferrell, 205 N.C. 640, 172 S.E. 186; S.v. Keaton, 206 N.C. 682, 175 S.E. 296; S. v. Satterfield, 207 N.C. 118,176 S.E. 466; S. v. Manning, supra.
It is contended that the charge was erroneous and misleading on the affirmative defenses of insanity and intoxication. The defendant contends that on the question of insanity the court should have instructed the jury "That if they found from the evidence that by reason of a diseased mind, the defendant had lost the power to control or govern his actions, then in that event it would be their duty to acquit him." There was some evidence to the effect that defendant had a venereal disease and that some years prior to the time of the trial below he had received medical treatment for same and thereafter served an enlistment of some six months in a C.C.C. Camp. An examination of the testimony discloses that in the trial below the defendant offered many witnesses in an effort to show that the defendant was weak minded and had always been so. His mother testified he was three years old before he could walk, that he did not develop properly mentally or physically, and that he did not have much sense. The pertinent part of the charge on the plea of insanity is as follows: "Gentlemen of the Jury, when the plea of insanity is set up by a person charged with the commission of a crime, the burden is on the person setting up that defense, that is, as in this case, the defendant, Sam Hairston, to show to the Jury, not by the greater weight of evidence or not beyond a reasonable doubt, but merely to your reasonable satisfaction, that he was insane. (Insanity, Gentlemen of the Jury, means such a perverted and deranged condition of the mental and moral faculties as to render a person incapable of distinguishing between right and wrong, or not conscious at the time of the nature of the act which he is committing.) Also, Gentlemen of the Jury, the Court instructs you that while the term `insanity' is not strictly speaking a legal term, it can be defined legally as a manifestation of disease of the brain characterized by a general or partial derangement of one or more faculties of the mind, and in which, while consciousness is not abolished, mental freedom is perverted, weakened or destroyed, to such an extent as to render a person incapable of distinguishing between right and wrong or not conscious at the time of the nature of the act he is committing. (In other words, Gentlemen of the Jury, to excuse one from criminal responsibility, he must be insane.) The defendant must be in such a state of mind from mental disease as to not know the nature and quality of the act he was committing, or if he did know it, that he did not know he was doing what was wrong. No other degree of insanity will excuse a person from liability or responsibility. (The *Page 460 
Court instructs you, Gentlemen of the Jury, that if a defendant is able to distinguish between right and wrong in respect to the charge of carnally knowing and abusing any female person at the time it occurred, if it did occur, and conscious of the criminal nature of it, then, he is criminally responsible — he would, under such circumstances, be bound, legally, to exercise self control, and some mental aberation he may have, unless he is insane, will not exempt or excuse him from responsibility.) Also, Gentlemen of the Jury, the court charges you, that insanity in a legal sense does not necessarily mean a total loss of reason. (The abnormal mental condition may relate to a single subject, or only to a few, leaving the mind otherwise free to act in a normal course; but if such abnormal mental condition renders the defendant incapable of distinguishing between right and wrong or not conscious of the nature of the act he is committing, at the time of committing the alleged rape so as not to know the nature and quality of the act he is doing, or if he did know it, that he did not know he was doing wrong, then he would be so criminally insane that he would not be responsible for his acts.) So, under our law, Gentlemen of the Jury, an insane person cannot be convicted of any crime, and it would make no difference what caused him to become insane. (If at the time of the commission of the crime charged in the bill of indictment, if you should find beyond a reasonable doubt that the defendant did commit the crime charged — should find to your reasonable satisfaction that the defendant was insane from any cause he should be acquitted, and you should return a verdict of `not guilty.') (However, the Court specifically charges you, that although there may be some mental derangement, still if the defendant had sufficient mental capacity to adequately comprehend the nature and extent of his act, if you find beyond a reasonable doubt that he committed any act, to distinguish between right and wrong, and a mind sufficient to form a criminal intent to ravish, he would not be entitled to an acquittal on the ground of mental capacity)." The defendant excepts and assigns error to those portions of the charge in parentheses.
To establish a defense on the ground of insanity, it must be proven to the satisfaction of the jury that at the time of the commission of the act the accused was laboring under such a defect of reason, from a diseased mind, as not to know the nature and quality of the act he was doing, or, if he did know, that he did not know he was doing wrong. Likewise, "insanity" includes a mental condition resulting from low mentality or a weak mind which makes the possessor thereof incapable of distinguishing between right and wrong or of comprehending the nature and consequence of his act. In 14 R. C. L., sec. 55, page 600, we find the test of legal responsibility, when the plea of insanity is interposed, to be as follows: "The prevailing view is apparently to the effect that *Page 461 
capacity of the accused to distinguish right from wrong in respect to the act charged as a crime at the time of its commission is made the test of his responsibility, and not his capacity or ability to distinguish right from wrong in the abstract. According to this view the capacity to distinguish between right and wrong need not be general; it is only necessary that it relate to the particular act in question. A person may be perfectly sane on every subject but one, and yet if that one subject is the very act with which he is charged, and with respect to it he is unable to distinguish between right and wrong, his defense is complete. But his defense is not complete and he is not entitled to acquittal on the ground of insanity if at the time of the commission of the crime he had sufficient capacity to enable him to distinguish between right and wrong, to understand the nature and consequence of his act, and had mental power sufficient to apply that knowledge to his own case. If a person has knowledge and consciousness that the act he is doing is wrong and will deserve punishment, whatever may be his mental weakness, he is in the eye of the law of sound mind and memory, and subject to punishment." The foregoing is in accord with our decisions. This Court, in S. v. Brandon,53 N.C. 463, said: "To excuse one from criminal responsibility the mind must, in the language of the judge below, be insane. The accused should be in such a state from mental disease as not to know the nature and quality of the act he was doing, or, if he did know it, that he did not know he was doing what was wrong, and this should be clearly established. This test, a knowledge of right and wrong, has long been resorted to as a general criterion for deciding upon legal accountability, and, with a restricted application to the act then about to be committed, is approved by the highest authorities. But we do not undertake to lay down any rule of universal application." S. v. Cooper, 170 N.C. 719, 87 S.E. 50; S. v.Terry, 173 N.C. 761, 92 S.E. 154.
The defendant also excepts to the following part of his Honor's charge on his plea of drunkenness: "The Court instructs you that if the defendant in this case was under the influence of intoxicating liquor or drinks to such an extent that his normal functions of body and mind were so interfered with — that is, if he was in such condition that he could not form an intent to commit rape — that is, if you find beyond a reasonable doubt that he did commit rape — that is, if he did not know what he was doing and what he was about and what he was trying to do; if he was so affected by the liquor or intoxicating drink that he could not form an intent, then he could not be guilty of the charge as contained in this bill of indictment, and it would be your duty to return a verdict of `not guilty.' Now, Gentlemen of the Jury, the Court also instructs you that if a man gets several drinks of liquor, or two or three drinks of liquor, *Page 462 
or any intoxicating drink, for the purpose of getting up his nerve, or giving him courage to commit some crime, that that would not be any excuse, but a person, Gentlemen of the Jury, to have a defense available to him of intoxication must have consumed a quantity of intoxicating drink to such an extent that he could not form a criminal intent."
On the plea of drunkenness as a defense, the burden is on the defendant to satisfy the jury that at the time of the commission of a crime he was intoxicated to such an extent that he did not know what he was doing, or trying to do, and was incapable of forming a criminal intent. However, if a defendant drinks liquor or other intoxicants for the purpose of giving him nerve and courage to commit a crime, then such voluntary drunkenness would not be an excuse for a crime committed while thus intoxicated. S. v. Adams,214 N.C. 501, 199 S.E. 716. The commission of the crime of rape, unlike murder in the first degree, does not require deliberation and premeditation as a prerequisite to conviction, but the intent is inferred from the commission of the act, just as malice is presumed when a person kills another with a deadly weapon. Therefore, if the defendant in the instant case committed the crime charged in the bill of indictment, and had sufficient knowledge to comprehend the nature and consequence of his act, at the time of the commission of the crime, he was not entitled to acquittal upon his plea of insanity or drunkenness.
We do not think the charge on the plea of insanity and drunkenness prejudicial to the defendant, but, on the contrary, that the charge fairly presented to the jury the defendant's contentions and defined his rights in respect thereto in substantial accord with the requisites of the law. No prayer for instruction was tendered by the defendant and none requested in response to an inquiry by the court if any further instructions were desired.
When the charge of the court is considered contextually, the remaining assignments of error thereto do not show reversible error. As stated in S.v. Cooper, supra; "The charge of the court must be considered as a whole, in the same connected way as given to the jury, and upon the presumption that the jury did not overlook any portion of it. If, when so construed, it presents the law fairly and correctly to the jury, there is no ground for reversing the judgment, though some of the expressions, when standing alone, may be regarded as erroneous. Kornegay v. R. R., 154 N.C. 389; S.v. Robertson, 166 N.C. 356; S. v. Lance, 149 N.C. 551; McNeill v. R.R., 167 N.C. 390; Thompson on Trials, sec. 2407." S. v. Smith, 217 N.C. 591,9 S.E.2d 9; S. v. Henderson, 218 N.C. 513, 11 S.E.2d 462;S. v. Shepherd, 220 N.C. 377, 17 S.E.2d 469; and S. v. Manning,supra. *Page 463 
The other assignments of error do not show sufficient prejudicial error to warrant a disturbance of the verdict below.
The defendant has been convicted of a heinous crime. He has been represented by able and painstaking counsel. His defenses were presented for the consideration of the jury, and the jury, in the light of all the evidence, returned a verdict of guilty as charged in the bill of indictment. In the trial below, we find
No error.